# Exhibit 1

# UNITED STATES DISTRICT COURT
for the
# MIDDLE DISTRICT OF PENNSYLVANIA

**SARA PICKETT**
*Plaintiff*

v.

**NORTH CHRISTOPHER MENGES, ET AL.**
*Defendant*

Civil Action No.:
**1:24-CV-00537-DFB**
Hon. Daryl F. Bloom

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

SEE COMPLAINT

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) —— or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) —— you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



**PETER J. WELSH**
*CLERK OF COURT*

**s/ – Rashelle Weida**
*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2024–03–29 13:23:59**, Clerk USDC MDPA

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Sara Pickett

**(b)** County of Residence of First Listed Plaintiff: Schuylkill County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se - PO Box 361 Pine Grove, PA 17963

## DEFENDANTS

North Christopher Menges, Joshua Harshberger, Bruce Hexter and Kristoffer Hexter

County of Residence of First Listed Defendant: York County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [x] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983, 1985 and 1986

Brief description of cause:
Deprivation of rights under color of law, conspiracy to interfere with civil rights and neglect to prevent

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 131,292.75

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE North Christopher Menges DOCKET NUMBER 2021-FC-001007-03

DATE 3/29/24

SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

**PARTIES**

**The Plaintiff**

Sara Pickett
PO Box 361
Pine Grove, PA 17963
Schuylkill County
(717) 454-9566
saradoesthat@gmail.com

**The Defendants**

North Christopher Menges, *as an individual*
Judge - York County Court of Common Pleas
45 N George St
York, PA 17401
York County

Joshua Harshberger, Esq., *as an individual*
Attorney
8150 Derry St, Ste A
Harrisburg, PA 17111
Dauphin County
jh@harshbergerlaw.com

Bruce Hexter, *as an individual*
Retired/Unknown
1472 Bramblewood Ct
Pottstown, PA 19464
Montgomery County
(610) 420-0219

Kristoffer Hexter, *as an individual*
Incarcerated
SCI-PHOENIX #QL4504
120 Mokychic Drive
Collegeville, PA 19426
Montgomery County

FILED
HARRISBURG, PA
MAR 29 2024
PER ______
DEPUTY CLERK

## COMPLAINT AND DEMAND FOR JURY TRIAL

PLAINTIFF Sara Pickett ("Plaintiff") sues North Christopher Menges ("Menges" or "Defendant(s)"); Joshua Harshberger ("Harshberger" or "Defendant(s)"); Bruce Hexter ("B. Hexter" or "Defendant(s)"), and Kristoffer Hexter ("K. Hexter" or Defendant(s)"), and states the following in support of this Complaint:

## NATURE OF THE ACTION

1. This is an action pursuant to 42 U.S.C. § 1983, 1985, and 1986 under the First, Third, Fourth, Fifth, Ninth and Fourteenth Amendments of the United States Constitution for the Defendants' individual and collective personal, malicious and unlawful violations under color of Pennsylvania law of Plaintiff's constitutional right to procedural and substantive due process, to parent her children without unnecessary interference, to a fair trial/impartial judge, to privacy, to access the court and to public access of the court as well as state tort claims for civil conspiracy.
2. Defendants committed these violations of Plaintiff's constitutional and state rights under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Plaintiff's fundamental rights.
3. These constitutional law violations are "capable of repetition, yet evading review." Roe v. Wade, 410 U.S. 113, 125 (1973) (citing Southern Pacific Terminal Co. v. ICC, 219 U. S. 498, 515 (1911), Moore v. Ogilvie, 394 U. S. 814, 816 (1969), Carroll v. Princess Anne, 393 U. S. 175, 178-179 (1968), United States v. W. T. Grant Co., 345 U. S. 629, 632-633 (1953)).

## JURISDICTION AND VENUE

4. Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Plaintiff brings this action against a state or local official and his co-conspirators for the deprivation of rights under color of law and related claims under 42 U.S.C. §§ 1985 and 1986.
5. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and supplemental jurisdiction over Plaintiff's state tort claims pursuant to 28 U.S.C. § 1367.
6. Venue is proper under 28 U.S.C. § 1391(b). The events and actions giving rise to this claim all occurred within this judicial district and all Defendants reside in the Commonwealth of Pennsylvania.
7. Plaintiff alleges that she has been deprived of the right to substantive and procedural due process, the right to parent her children without unnecessary interference, the right to fair proceedings, the right to privacy, the right to access the court, and the right of public access to the court.
8. Menges is acting under the color of state law in his judicial capacity, and by conspiring with him to create a specific outcome, so are the remaining Defendants.

**PARTIES**

9. Plaintiff Sara Pickett is a 34 year old Pennsylvania resident residing within this Court's jurisdiction. Plaintiff is the mother of the minor children, A.P. and R.H., subject to the underlying action in this Complaint.
10. Defendant North Christopher Menges is the presiding judge in the underlying matter in the York County Court of Common Pleas. At all times relevant to Menges' acts and omissions alleged in this complaint, Menges acted under the color of Pennsylvania law. He is subject to liability under 42 U.S.C. §§ 1983, 1985, 1986. Menges is sued in his individual capacity.
11. Defendant Joshua Harshberger is an attorney representing Defendants Kristoffer Hexter and Bruce Hexter. During all times mentioned in this Complaint, Harshberger acted under color of Pennsylvania law by conspiring or "reaching an understanding" with North Christopher Menges to enter specific relief on behalf of his clients and to otherwise threaten, intimidate and coerce Plaintiff. He is subject to liability under 42 U.S.C. §§ 1983, 1985. Harshberger is sued in his individual capacity.
12. Defendant Bruce Hexter is an individual residing in Montgomery County. He is the father of Kristoffer Hexter and paternal grandfather of minor child R.H., During all times mentioned in this Complaint, B. Hexter acted under color of Pennsylvania law by conspiring or "reaching an understanding" with North Christopher Menges to enter specific relief on his behalf and to otherwise threaten, intimidate and coerce Plaintiff. He is subject to liability under 42 U.S.C. §§ 1983, 1985. B. Hexter is sued in his individual capacity.
13. Defendant Kristoffer Hexter is an individual currently incarcerated in Montgomery County for violent sexual offenses against a minor. He is the father of minor child R.H. During all times mentioned in this Complaint, K. Hexter acted under color of Pennsylvania law by conspiring or "reaching an understanding" with North Christopher Menges to enter specific relief on behalf of himself and/or his father and to otherwise threaten, intimidate and coerce Plaintiff. He is subject to liability under 42 U.S.C. §§ 1983, 1985. K. Hexter is sued in his individual capacity.

**INTRODUCTION**

14. The underlying matter in this complaint is a grandparent intervention case in the York County Court of Commons Pleas, case no. 2021-FC-001007-03.
15. This intervention was initiated by Defendants B. Hexter and K. Hexter, by and through their shared counsel Defendant Harshberger, in an apparent attempt to circumvent Plaintiff's rights and liberty interests as a fit parent with sole custodial rights upon K. Hexter's long term incarceration for violent sexual offenses against a minor. This was done by filing an improper Petition to Intervene which fails to establish standing (jurisdiction) or state any valid claim for relief.

16. Plaintiff possesses sole physical and legal custody rights to minor child R.H. and exclusive rights to minor child A.P., as she has no biological or psychological connection to the other parties, and no party has ever alleged that Plaintiff is unfit.
17. B. Hexter does not possess any protected rights or interests in the existing custody case to support any action for intervention, he was not unreasonably denied contact, and he has no relation at all, biological or psychological, to the minor child A.P. to support any claim of rights to her.
18. B. Hexter refused to make arrangements for visitation with minor child R.H. outside of a court order or a signed agreement to be enforced by the court, which must include both of Plaintiff's children. This shows his intent to deprive Plaintiff of the right to make these decisions for her children based simply on his sense of entitlement.
19. By all expectations, this intervention would have failed if it were not for the actions of Defendant Menges, as the presiding judge, who has acted under color of process and color of law to craft an outcome that finds no basis in fact or law and "reached an understanding" with the remaining Defendants to enter and enforce this outcome, which allows them to act under color of state law.
20. In addition, Menges' actions prevent the Plaintiff from seeking appellate relief for this unnecessary intervention by failing to enter any orders that can be defined as final under the PA Rules for Appellate Procedure.
21. These actions, and all following, were taken without consideration for the requirements stated in 23 Pa. C.S. § 5324, 23 Pa. C.S. § 5325(2) and 23 Pa. C.S. § 5328, thus committing an error of law that set the tone for the court to deprive Petitioner of both substantive and procedural due process rights and other substantial rights under the color of law and color of process without ever establishing jurisdiction to invoke third-party rights or intervention.
22. "Orders entered in the absence of a justiciable question properly presented to the court by the parties are void since they result from court action exceeding its jurisdiction." See Ligon v. Williams, 264 Ill. App. 3d 701 (Ill. App. Ct. 1994) See Thayer, 369 Ill. at 339, 16 N.E.2d at 719 ("[E]very act of the court beyond its jurisdiction is void").

## FACTUAL ALLEGATIONS

23. On August 2, 2021, Harshberger filed an improper Petition to Intervene on behalf of B. Hexter, seeking grandparent intervention for court-mandated visitation of Plaintiff's children. This request is based on K. Hexter's long-term incarceration for violent sexual charges against a minor. However, it is evident that this petition serves only to circumvent Plaintiff's rightful decision-making authority in determining what is in the best interest of her children.
24. On February 8, 2022, the Plaintiff attended the pretrial conference with sole custody of both children. The agenda included discussing B. Hexter's status as an intervenor and clarifying A.P.'s role in the case, as there had been no prior establishment of K. Hexter's legal rights to her. Menges explicitly stated his intention to grant the relief requested by B. Hexter and instructed the Plaintiff to settle.

25. On April 7, 2022, the first day of the trial, Menges began by conducting an interview with A.P. Following this interview, the court determined to recognize K. Hexter as A.P.'s 'psychological father,' while simultaneously stating that no contact would be permitted between them. These decisions appear contradictory. Unfortunately, much of the discussion in open court regarding A.P.'s interview and Menges' rationale for his decisions concerning her is missing from the official transcripts. Additionally, the decision to acknowledge K. Hexter as A.P.'s 'psychological parent' is not documented in any orders. Plaintiff suspects this omission may be intentional, possibly to prevent this issue from being raised on appeal.
26. During the trial proceedings, Menges asked K. Hexter if they wished for B. Hexter to be involved in the custody proceedings through a court order, to which K. Hexter consented. However, it's crucial to note that K. Hexter does not possess any decision-making authority regarding either child.
27. B. Hexter failed to present any meaningful evidence to substantiate his claim for relief.
28. At the behest of Harshberger and B. Hexter, a temporary order was entered, granting Bruce mandated visitation and phone calls with both children.
29. On June 2, 2022, Menges issued even more intrusive and restrictive orders, despite objections from the Plaintiff. These orders extended B. Hexter's custodial time and additionally required the Plaintiff to provide him with her personal login for the school portal. This grant of access allows for the viewing of sensitive information and records without the Plaintiff's consent. Furthermore, the order includes a review hearing that could potentially expand the rights of K. Hexter and/or B. Hexter without any cause or petition for modification. Additionally, the order suggests that K. Hexter or B. Hexter should file a petition for contempt if they believe the Plaintiff has not followed the orders.
30. Although this Order is labeled as final, it does not meet the criteria for a final order according to the PA Rules of Appellate Procedure, thereby preventing the Plaintiff from seeking appellate review and relief.
31. On September 6, 2022, the Plaintiff raised concerns about Menges potentially committing a legal error and questioned the court's jurisdiction over the subject matter. The court's actions seem to favor a grandparent and an incarcerated sex offender, who lacks decision-making rights, over a fit parent with sole custodial rights. However, Menges declined to address the raised issues and instead instructed the Plaintiff to appeal the order to the Superior Court.
32. Menges expressed his intention to schedule another review hearing and potentially a contempt hearing immediately after these issues were raised. Furthermore, he issued a warning that K. Hexter could be granted joint legal custody. This action appears to be an attempt to intimidate Plaintiff after she raised concerns about her rights being violated without cause, indicating an intent to do so.
33. Plaintiff requested an explanation for Menges' determination that this outcome is in the best interest of the children. However, he evaded providing a response and simply instructed Plaintiff to seek legal counsel.
34. Menges inquired of K. Hexter whether he supports granting Bruce increased or enforced access to more information regarding the children, specifically referencing their private records. It seems that Menges believes he can mitigate the deprivation of the Plaintiff's rights by demonstrating consent from the other parent (of one child) to the intervention.

35. The September 7, 2022 order instructs the Plaintiff to provide B. Hexter with the children's private school, medical, and therapy records. This directive appears to circumvent the Plaintiff's right to safeguard these records, especially considering that B. Hexter lacks the legal right to access them. Furthermore, it seems to be an effort to gather information, as there is no clear factual or legal basis supporting the outcome of this intervention. It appears that Plaintiff was not expected to resist settling and waiving her rights.
36. This order once again indicates a desire to expand B. Hexter's rights at a future hearing, further obstructing the Plaintiff's ability to pursue appellate relief.
37. The Plaintiff did attempt to appeal this order, and the Superior Court's opinion aligns with her understanding of the Appellate rules regarding the definition of a final order. This decision was non-precedential, and their determination is that a final order has not been entered in this case.
38. On May 9, 2023, during a contempt hearing, Menges granted B. Hexter shared legal custody rights "as a sanction," purportedly to avoid the necessity of making a custody determination that aligns with relevant statutes. The record is sufficient to prove that Bruce lacks standing for this relief, suggesting an abuse of discretion, abuse of process, and abuse of jurisdiction. Before docketing the Order, Menges removed the provision for shared legal custody and instead encouraged B. Hexter to file a petition for modification to seek that relief.
39. In both the hearing and the resulting order, Menges also mentions that the Plaintiff will likely face incarceration directly following the next contempt hearing. Plaintiff perceives this as an attempt to intimidate her for asserting her rights as a parent and the court's apparent lack of cause for any intervention.
40. On June 28, 2023, B. Hexter, represented by his counsel Harshberger, filed a PETITION FOR MODIFICATION OF CUSTODY ORDERS seeking shared physical and legal custody. The petition alleged Plaintiff's noncompliance with existing orders as cause, yet neglected to plead standing or present a valid claim for relief. The existing record is sufficient to establish that he lacks standing for this relief.
41. Menges failed to enter the ex parte communication from K. Hexter onto the record for the Plaintiff to view and respond to, if desired. This communication was acknowledged in Hexter's June 8, 2023 correspondence to the Prothonotary and in the July 17, 2023 ORDER GRANTING MOTION FOR DISCOVERY. Instead, Menges provided only the clerk's response to this communication.
42. On July 17, 2023, Menges promptly denies Plaintiff's MOTION TO DISMISS concerning the custody modification sought by Bruce for shared physical and legal custody, stating that the matter had been previously addressed. However, this was a new motion with fresh claims, including a challenge to jurisdiction regarding the requested modification and the court's jurisdiction over Plaintiff's minor child A.P. This challenge is based on the standard set by the Psychological Parent Doctrine, which is evidently not met when the child does not view the individual as a parent, and a no-contact order is in place due to fear and past abuse inflicted by that individual. However, in this hearing, Menges alters his assertion from A.P.'s involvement being attributed to K. Hexter as her "psychological father" to B. Hexter being deemed her "psychological grandparent." This term is not recognized in legal terminology. However, if we apply similar standards as those of the Psychological Parent Doctrine, it becomes evident that this explanation also

does not align. This determination appears to solely aim at violating Plaintiff's exclusive rights to the child.

43. Menges once again expressed his intent to potentially incarcerate Plaintiff to compel compliance. Given the circumstances, this would deprive Plaintiff of the fundamental right to liberty without just cause.
44. Menges scheduled the pretrial conference for the custody modification requested by B. Hexter for June 4, 2024.

**STATEMENT OF CLAIM**

**Count I: § 1983 CLAIM FOR DENIAL OF RIGHT TO FAIR TRIAL/IMPARTIAL JUDGE AGAINST MENGES**

45. Plaintiff re-alleges and incorporates by reference all of the proceeding paragraphs in this complaint.
46. From the very inception of this intervention, Menges has displayed an extreme bias regarding the subject matter of grandparent rights, significantly impacting his ability to adhere to relevant statutes, court rules, and procedures. The result is an outcome that lacks any basis in fact or law, depriving the Plaintiff of fundamental rights and liberties without cause.
47. Plaintiff believes his actions are a result of this bias and retaliation for her refusal to settle (waive her rights), for voicing opposition on the record, and for seeking review and relief from these orders.
48. Due process guarantees that a criminal defendant will be treated with "that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." Lisenba v. California, 314 U.S. 219, 236 (1941)

    Plaintiff finds it reasonable that this same concept would extend to civil proceedings by application of Fifth and Fourteenth Amendment protections.

49. "The neutrality requirement helps guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law." *Marshall v. Jericco Inc., 466 US 238, 242, 100 S.Ct. 1610, 64 L. Ed. 2d 182 (1980).*
50. Menges has made numerous statements on the record that demonstrate his significant bias and apparent intent to weaponize the court against Plaintiff. These statements include, but are not limited to, the following:
    a. On February 8, 2022, in the pretrial conference and without any supporting facts to consider, he stated: "that looks like a slam dunk to me for standing" and "the chances of my giving grandfather zero custodial rights, probably not good at all. He's going to get something."
    b. On June 2, 2022, concluding the trial he stated: "And if you don't do more to try to encourage a good relationship between these two children and their grandfather, I'll do it and I'll just give him more and more and more time until you get the message; is that clear?"
    c. On September 6, 2022, in a review hearing: "And ma'am, I'm going to be very blunt with you. The more you try to hide the ball, as Judge Prendergast loves to

put it and I love that expression, and keep grandfather from knowing things, the more time I'm going to give him. Is that clear?"

d. On May 9, 2023, as an explanation for modifying legal custody from sole to shared with B. Hexter, "This is what I need to do to get around your rights."

51. On April 10, 2023 Plaintiff motioned for Menges to recuse himself under 28 USC § Sec. 455, 207 Pa. Code § 2.11(A), and Canon 3 of the Judicial Code of Conduct, citing his evident bias towards B. Hexter and the subject matter of grandparents rights and its impact on his adherence to relevant statutes, court rules, and procedures. The motion also requested review by another judge, as retaliation was feared and anticipated. This motion was denied on April 20, 2023, citing "insufficient evidence."
52. On May 18, 2023, Plaintiff submitted a 322-page MOTION TO DISQUALIFY Menges under 28 USC § Sec. 455, 207 Pa. Code § 2.11(A), and Canon 3 of the Judicial Code of Conduct for the same reasons as outlined in the MOTION TO RECUSE, supplemented with court orders, transcripts, and other documents to substantiate all claims. This motion was denied on July 6, 2023.
53. "Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified.". Liteky v. U.S., 114 S.Ct. 1147, 1162 (1994).
54. "Recusal under Section 455 is self-executing; a party need not file affidavits in support of recusal and the judge is obligated to recuse herself sua sponte under the stated circumstances." Taylor v. O'Grady, 888 F.2d 1189 (7th Cir. 1989).
55. These deprivations of rights under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

**Count II: § 1983 CLAIM FOR DEPRIVATION OF THE RIGHT TO REAR HER CHILDREN WITHOUT UNECESSARY INTERFERENCE AGAINST MENGES, HARSHBERGER, B. HEXTER AND K. HEXTER**

56. Plaintiff re-alleges and incorporates by reference all of the proceeding paragraphs in this complaint.
57. "The essence of the Supreme Court's opinion is that the law presumes parents are fit and are making decisions in their children's best interests, therefore it is not appropriate for the state to intervene in parental decisions without cause. To do so would violate the Constitution's due process and equal protection clauses." See D.P. and B.P., Aplts. v. G.J.P. and A.P., 25 WAP 2015 (Pa. 2016).
58. Plaintiff vehemently opposes any and all court interference on behalf of any third party.
59. Plaintiff is a fit parent with sole custodial rights and is competent to act in the best interest of her children.
60. "In Troxel v. Granville, No. 99-138, 2000 WL 712807 (U.S. June 5, 2000), the Court reiterated that the parental interest in "the care, custody, and control of their children" is "perhaps the oldest of the fundamental liberty interests recognized by this Court." Id. at *5. That case reaffirmed the validity of such long-standing precedents as Meyer v. Nebraska, 262 U.S. 390, 401 (1923) (right of parents to control education of their children), Pierce v. Society of Sisters, 268 U.S. 510, 534-35 (1925) (right to direct upbringing and education of children), and Prince v. Massachusetts, 321 U.S. 158, 166

(1944), where the Court said "the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." See also Wisconsin v. Yoder, 406 U.S. 205, 232-33 (1972) ("primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition," particularly in matters of "moral standards, religious beliefs, and elements of good citizenship")." See Gruenke v. Seip, 225 F.3d 290 (3d Cir. 2000).

61. The right to rear one's children is so deeply embedded in our history and culture that it has been identified as a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Wisconsin v. Yoder, 406 U.S. 205, 232-33, 92 S.Ct. 1526, 1541-42, 32 L.Ed.2d 15, 35 (1972) (explaining "primary role" of parents in raising their children as "an enduring American tradition" and the Court's historical recognition of that right as fundamental). Although often expressed as a liberty interest, childrearing autonomy is rooted in the right to privacy. See Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645, 652 (1944) (observing existence of "private realm of family life which the state cannot enter")
62. These deprivations of rights under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

**COUNT III: § 1983 CLAIM FOR DEPRIVATION OF RIGHT TO PRIVACY AGAINST MENGES, HARSHBERGER, B. HEXTER AND K. HEXTER**

63. Plaintiff re-alleges and incorporates by reference all of the proceeding paragraphs in this complaint.
64. Although often expressed as a liberty interest, childrearing autonomy is rooted in the right to privacy. See Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645, 652 (1944) (observing existence of "private realm of family life which the state cannot enter")
65. On June 2, 2022, Menges explicitly stated that he would not allow the Plaintiff to maintain her established confidential address, which was implemented due to domestic violence and stalking perpetrated by K. Hexter. The disclosure of her physical whereabouts is unnecessary to execute any valid court order in this case. Menges justified this decision by asserting that Plaintiff should merely trust B. Hexter. As a result, Plaintiff does not feel safe and secure in her own home.
66. On June 2, 2022, September 6, 2022, and May 9, 2023, Menges entered orders requiring Plaintiff to provide B. Hexter with access to the children's private school, medical, and therapy records, by consent from K. Hexter, who does not possess any legal custody rights. Plaintiff believes this is an attempt to gather information in hopes of creating a legal basis for court intervention.
67. B. Hexter has used these orders to obtain sensitive records and information directly from the children's school without Plaintiff's consent.
68. On April 10, 2023, and June 28, 2023, Harshberger filed PETITIONS FOR FINDING OF CONTEMPT requesting enforcement of the provision to provide these private records on behalf of B. Hexter.

69. These deprivations of rights under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

**Count IV: § 1983 CLAIM FOR DEPRIVATION OF RIGHT TO ACCESS THE COURT AGAINST MENGES**

70. Plaintiff re-alleges and incorporates by reference all of the proceeding paragraphs in this complaint.
71. To date, Menges has failed to enter any Order for the grandparent intervention that could be defined as final according to the PA Rules of Appellate Procedure. This prevents the Plaintiff from accessing appellate jurisdiction to seek review and relief from these erroneous orders.
72. On July 17, 2023, Menges issued orders stipulating that observers may not appear via Zoom due to concerns with recording. Plaintiff believes that this is done to prevent the possibility of a recording that could challenge the accuracy of the transcripts. Plaintiff perceives this as a violation of the Right to Public Access protected by the First Amendment. This case has garnered national attention, and the public should not be hindered from viewing the proceedings. Simply informing viewers that recording proceedings is prohibited should suffice, as the public has a vested interest in upholding the law. Their presence is to ensure judicial integrity.
73. Plaintiff has been unable to obtain any true and accurate transcripts of the proceedings. She believes that the transcripts are being altered to cover up the willful deprivation of her rights and her raising the errors in open court. This could have a significant impact on her ability to obtain appropriate relief. Typically, she is unable to secure a copy of the transcripts until the window to file a dispute has closed.
74. The exception is the May 9, 2023 transcripts, which Plaintiff received on June 6, 2023. On June 7, 2023, she filed a MOTION TO CORRECT TRANSCRIPTS to address the two most significant errors found within the record, one of which is Menges' statement that "this is what I need to do to get around your rights" regarding his modification of legal custody from sole to shared with B. Hexter. However, this MOTION TO CORRECT TRANSCRIPTS was denied on June 23, 2023, leaving Plaintiff with no other option to address the errors.
75. Cover-ups that prevent a person who has been wronged from vindicating his rights violate the right of access to the courts protected by the substantive due process clause. *Swekel v. City of River Rouge,* 119 F.3d 1259, 1261-64 (6th Cir. 1997); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1253-58 (7th Cir. 1984); *Ryland v. Shapiro,* 708 F.2d 967, 975 (5th Cir. 1983); *see also Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974) ("The right of access to the courts . . . is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights."). "[I]f state officials wrongfully and intentionally conceal information crucial to a person's ability to obtain redress through the courts, and do so for the purpose of frustrating that right, and that concealment and the delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled, they may have committed a constitutional violation." *Swekel,* 119 F.3d at 1262-63 (citing *Ryland,* 708 F.2d at 969-70). See *Estate of Smith v. Marasco*, 318 F.3d 497, 511 (3d Cir. 2003)

76. These deprivations of rights under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

**Count V: § 1983 CLAIM FOR DENIAL OF DUE PROCESS (PROCEDURAL) AGAINST MENGES**

77. Plaintiff re-alleges and incorporates by reference all of the proceeding paragraphs in this complaint.
78. "A departure by a court from those recognized and established requirements of law, however close apparent adherence to mere form in method of procedure, which has the effect of depriving one of a constitutional right, is an excess of jurisdiction." See *Wuest* v. *Wuest*, 127 P2d 934, 937.
79. On April 7, 2022, regarding K. Hexter's claim to A.P., Menges described it as 'a bit like standing,' asserting that the burden of proof lies with the Plaintiff to demonstrate that it is not in A.P.'s best interest to recognize K. Hexter as her 'psychological father.' This is literally a determination of standing and K. Hexter openly acknowledges that he is not her biological parent, does not stand in loco parentis, and the child does not view him as a parent nor desire any relationship with him. Therefore, the burden of proof rests solely on the party making the claim. This constitutes a violation of the plaintiff's substantive and procedural due process rights, depriving Plaintiff of the liberty interest to parent her own child, and suggests an intention to do so.
80. Much of the conversation regarding A.P.'s interview and the explanation of the decisions made does not appear in the transcripts or in any order. As a result, it appears as though the court did not make any official determination regarding K. Hexter as her 'psychological father,' and there is no explanation on the record for the no-contact order between the two.
81. In entering relief on behalf of B. Hexter on April 7, 2022, June 2, 2022, September 6, 2022, and May 9, 2022, Menges failed to consider the requirements stated in 23 Pa. C.S. § 5324, 23 Pa. C.S. § 5325(2), and 23 Pa. C.S. § 5328, as well as all relevant court rules.
82. *"Where a court failed to observe safeguards, it amounts to denial of due process of law, court is deprived of juris." See Merritt v. Hunter, C.A. Kansas 170 F2d 739.*
83. *"Where a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction, and courts exercising jurisdiction over such matters must proceed within the strictures of the statute." In Interest of M.V., 288 Ill.App.3d 300, 681 N.E.2d 532 (1st Dist. 1997)*
84. These deprivations of rights under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

**Count VI: § 1983 CLAIM FOR DENIAL OF DUE PROCESS (SUBSTANTIVE) AGAINST MENGES**

85. Plaintiff re-alleges and incorporates by reference all of the proceeding paragraphs in this complaint.
86. Menges deprived Plaintiff of the right to a fair trial/impartisl judge without cause.
87. Menges deprived Plaintiff of the right to privacy without cause.

88. Menges deprived Plaintiff of the right and liberty interest to rear her children without unnecessary interference from the state without cause.
89. Menges deprived Plaintiff of the right to due process without cause.
90. These deprivations of rights under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

**Count VII: § 1985 CLAIM FOR CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS AGAINST MENGES, HARSHBERGER, B. HEXTER AND K. HEXTER**

91. Plaintiff re-alleges and incorporates by reference all of the proceeding paragraphs in this complaint.
92. It quickly becomes evident that Menges intends to "reach an understanding" with Harshberger and his clients, seemingly aiming not only to deprive Plaintiff of her right to parent her children without undue interference but also to weaponize the court against her for her opposition. This is evidenced by overt intimidation, threats, and coercion directed at the Plaintiff both in open court and through subsequent orders. It is explicitly clear that Menges intends to persist in taking adverse actions against Plaintiff, which have the effect of further violating her rights without cause. He goes so far as to state the relief he wishes to enter and which petition he'll need B. Hexter and/or K. Hexter to file to accept his offer. Eventually, they did begin following up on Menges' nudges by entering the suggested petitions. Plaintiff perceives these actions as retaliatory.
    a. On June 2, 2022, Menges states his intent to grant B. Hexter 'more and more and more time' until Plaintiff is willing to support a relationship between him and her children. This statement appears to be aimed at silencing her opposition and coercing her into waiving her rights.
    b. On September 6, 2022, after Plaintiff raised questions about the court's jurisdiction to enter this relief and pointed out an error of law contributing to this outcome, Menges stated his intent to hold Plaintiff in contempt if B. Hexter suggested that she was in any way noncompliant with the orders. Subsequently, in the following orders, he seemingly prompts B. Hexter and/or K. Hexter to file a Petition for Contempt.
    c. On April 10, 2023, following Plaintiff's attempted appeal to the PA Superior Court, B. Hexter enters a PETITION FOR FINDING OF CONTEMPT OF CUSTODY ORDERS. On May 9, 2023, Plaintiff was held in contempt with zero evidence to substantiate any claims made. Both in open court and in the resulting order, Menges states that it is likely Plaintiff will be incarcerated directly from the next hearing if B. Hexter were to file a second Petition for Contempt. This is concerning to Plaintiff because it establishes for B. Hexter, K. Hexter, and Harshberger that there is no burden of proof for their claims and positions all four Defendants clearly against Plaintiff. The result of this could be the loss of liberty by means of a malicious arrest.
    d. In the contempt hearing held on May 9, 2023, Judge North questions Bruce on why he hasn't yet filed for a modification of custody, portraying the situation as 'dire,' and initially grants him shared legal custody. However, this provision is removed before the Order is docketed. Instead, Judge North suggests in the Order for Bruce to file the modification petition to obtain that relief. The record is

sufficient to demonstrate that Bruce could not have standing for any form of legal custody.

e. Naturally, this is followed up by Harshberger filing both a PETITION FOR FINDING OF CONTEMPT OF CUSTODY ORDERS and a PETITION FOR MODIFICATION OF CUSTODY ORDERS on June 28, 2023, for B. Hexter. These petitions request that the children be placed in B. Hexter's care if Plaintiff is incarcerated for any period of time and that B. Hexter be granted shared physical and legal custody of the children. Plaintiff filed a Motion to Dismiss for both petitions; however, these motions were denied on July 17, 2023, because, as Menges claims, the issues contained in the motions had already been dealt with. A pretrial conference for the custody modification has been scheduled for June 4, 2024.

93. In over two years of litigation, Judge North has failed to enter any orders on the issue of grandparent intervention that can be defined as final according to the PA Rules of Appellate Procedure. This has been confirmed by the PA Superior Court, and it has prevented Plaintiff from seeking appropriate relief through the typical channels. Plaintiff believes this action is intentional to prevent a review of this matter due to the significant errors.
94. The transcripts have been clearly altered to conceal the willful deprivation of Plaintiff's rights and her raising these issues in open court. This violates Plaintiff's right to access the courts and could significantly impact her ability to obtain appropriate relief.
95. On July 17, 2023, Judge North issued orders prohibiting observers from appearing via Zoom due to concerns about recording. Plaintiff believes this measure aims to prevent the possibility of recording that could challenge the accuracy of the transcripts. Plaintiff sees this as a violation of the Right to Public Access protected by the First Amendment. Given the national attention this case has garnered, the public should not be hindered from viewing the proceedings in any way. Merely informing viewers of the prohibition on recording proceedings should suffice, as the public has a vested interest in upholding the law. Their presence serves to ensure judicial integrity.
96. This conspiracy to interfere with civil rights is actionable under and may be redressed by 42 U.S.C. § 1985.

**Count VIII: § 1986 CLAIM FOR NEGLECT TO PREVENT AGAINST MENGES**

97. Plaintiff re-alleges and incorporates by reference all of the proceeding paragraphs in this complaint.
98. Menges had ample opportunity to dismiss Bruce Hexter's improper Petition to Intervene sua sponte to prevent this deprivation of rights.
99. This neglect to prevent is actionable under and may be redressed by 42 U.S.C. § 1986.

**Count IX: STATE TORT OF CIVIL CONSPIRACY AGAINST MENGES, HARSHBERGER, B. HEXTER AND K. HEXTER**

100. Plaintiff re-alleges and incorporates by reference all of the proceeding paragraphs in this complaint.

101. Defendants Menges, Harshberger, B. Hexter and K. Hexter conspired to deprive Plaintiff of fundamental rights by entry of erroneous orders in family court. These orders were entered without cause and with reckless indifference to Plaintiff's rights and are enforced by threats, intimidation and coercion.

102. Defendants, together, conspired to retaliate and intimidate Plaintiff for refusing to settle and waive her rights and for seeking relief from these orders. This is accomplished by contempt actions through the court which include threats of incarceration and significant changes to Plaintiff's custody.

103. The actions underlying this conspiracy are illegal under the United States Constitution's First, Third, Fourth, Fifth, Ninth and Fourteenth Amendments.

104. This deprivation under color of law is actionable under and may be redressed by 42 U.S.C. § 1983 and 28 U.S.C. § 1367.

## RELIEF SOUGHT

WHEREFORE, Plaintiff prays that this Honorable Court:

1. Issue preliminary and permanent injunctions
    a. enjoining Defendant NORTH CHRISTOPHER MENGES from modifying or enforcing the orders,
    b. to require his disqualification from presiding over any proceedings involving Plaintiff and/or her children and
2. Enter the following:
    a. Declaratory judgement that 23 Pa. C.S. § 5325(2) is null and void because it (1) violates the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution, (2) it violates the Due Process Clause of the Fourteenth Amendment, and (3) it infringes on the rights and liberty interests that parents possess to rear their children without unnecessary interference from the State.
        i. A disagreement between the parents does not constitute a voluntary and intelligent waiver of any rights,
        ii. One individual may not consent to violate the rights of another individual,
        iii. A disagreement between the parents cannot be translated to assume that a parent opposing court intervention is unfit, and
        iv. A disagreement between the parents does not constitute a compelling state interest.
    b. Declaratory judgement that the orders entered in case no. 2021-FC-001007-03 are null and void because (1) they violate the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution, (2) they violate the Due Process Clause of the Fourteenth Amendment, (3) they infringe on Plaintiff's rights and liberty interests that parents possess to rear their children without unnecessary interference from the State, (4) they violate Plaintiff and her children's right to privacy, and (5) they do not adhere to the guidelines and requirements of any existing state or federal law.
        i. If a judge does not fully comply with the Constitution, then his orders are void, In re Sawyer, 124 U.S. 200 (1888).
    c. Compensatory damages

d. Punitive damages
e. Grant such other and further relief, in law and equity, as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues triable by jury.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 3/29/2024

Signature of Plaintiff [signature]

Printed Name of Plaintiff Sara Pickett