IN THE COURT OF COMMON PLEAS OF YORK COUNTY,

PENNSYLVANIA

SARA PICKETT          : No. 2021-FC-001007-03
                      :
  VS                  :
                      :
KRISTOFFER HEXTER     :

York, Pa., Tuesday, February 8, 2022

Before the Honorable N. CHRISTOPHER MENGES, Judge

APPEARANCES:

    JOSHUA B. BODENE, Esquire
    For the Plaintiff

    JOSHUA A. HARSHBERGER, Esquire
    For the Defendant

TRANSCRIPT OF PROCEEDINGS

Reported by:

Emily Riccardi
Official Court Reporter

Ex 1

<u>PROCEEDINGS HELD ON TUESDAY, FEBRUARY 8, 2022</u>

\* \* \*

4     THE COURT: Okay. We're here for a
5 pre-trial conference. Attorney Harshberger, you
6 represent father and grandfather, do I get that right?
7     ATTORNEY HARSHBERGER: Yes, Your Honor.
8     THE COURT: Father is incarcerated four
9 and a half to ten years or something like that, do I
10 have that right?
11     ATTORNEY HARSHBERGER: Yes. He's at SCI
12 Phoenixville.
13     THE COURT: Okay. So what is it exactly
14 that father and/or grandfather want?
15     ATTORNEY HARSHBERGER: Grandfather would
16 like some visitation, minimal one week vacation time in
17 the summer to take his grandchildren to parks and
18 whatnot and some holiday time. We're not talking
19 holiday time is on Christmas day but somewhere around
20 the holiday to enjoy Christmas or Thanksgiving or the
21 like.
22     I put in my pre-trial would have monthly
23 weekend once a month weekend but I spoke with
24 grandfather the other day, we are willing to push that
25 out to maybe once every six weeks so, like, a month and

1  half, something like that. He just wants to be a
2  grandfather and he wants to see his grandchildren,
3  nothing more, nothing less. Since father's
4  incarceration, he has not been able to see or hear from
5  his grandchildren and he misses them dearly. So we're
6  not asking for the world, Your Honor. We're just
7  asking for minimal visitation.
8  　　　　　　THE COURT: Attorney Bodene, on behalf
9  of mother, tell me why that's unacceptable.
10 　　　　　　ATTORNEY BODENE: Thank you, Your Honor.
11 May it please the Court, certainly there are situations
12 where a grandparent would be entitled to much more than
13 that. The question was really what is the history of
14 the case, I think the party have a real disagreement
15 and hence the need of a trial. Grandfather has never
16 exercised what he's asking for. He's never exercised
17 anything remotely close to what he's asking for. Since
18 the institute of the case, my client indicates that he
19 hasn't reached out a single time. It's not as if she's
20 withholding the children, he just simply hasn't asked
21 for time or reached out. She believes that he's asking
22 for time as a back door so that father can have contact
23 with the kids outside of her awareness.
24 　　　　　　THE COURT: And how is that going to be
25 accomplished?

```
 1                ATTORNEY BODENE:  I'm sorry, Your Honor?
 2                THE COURT:  How would we have that
 3   contact through his father?  He's incarcerated.  He's
 4   only going to have phone contact.
 5                ATTORNEY BODENE:  Correct.  And possibly
 6   visiting contact.  But the point is --
 7                THE COURT:  So mother is afraid that
 8   grandfather is gong to take these children to the state
 9   correctional institution to see the father.
10                ATTORNEY BODENE:  And/or allow phone
11   contact that would be of a nature that perhaps would be
12   derogatory to her.  And she has very serious concerns
13   about father given his significant criminal past, some
14   charges involving the children, some charges involving
15   another minor.  I don't know the specifics of father's
16   sentencing requirements but having experience with that
17   type of case, I'm confident that there are significant
18   restrictions that he can probably have with contact
19   regarding minors.  I don't know if they have to do with
20   these children or not.  But that would have to be
21   flushed out.
22                So my client doesn't have a problem in
23   theory with grandfather having contact with the
24   children.  It's court-ordered time.  She in the past
25   has always accommodated his request when he wants to
```

1  stop by, see the kids, take them out for lunch with her
2  present. She doesn't have a problem with that. It's
3  the court-ordered mandated nature of it that does not
4  match up with the history that is her concern, Your
5  Honor.
6           THE COURT: Okay. Well, let's start
7  with a couple of things so we can set this down for
8  trial. First of all, I've seen something in the
9  pleadings about father. Apparently maybe the Lebanon
10 County Court said he was not a risk of harm?
11          ATTORNEY HARSHBERGER: Correct.
12          THE COURT: Was that after a hearing?
13 Tell me how that happened because --
14          ATTORNEY HARSHBERGER: That was after
15 multiple hearings actually. So, yes, it was after a
16 hearing. Judge Kline heard all of the testimony from
17 mother's behalf and any rebuttal from father and myself
18 to where he's found not a risk of harm to his specific
19 children. And the criminal sentence that he's
20 currently serving of four and a half years, he won't be
21 eligible for parole until some time in February of 2026
22 by my calculations. And I believe -- I don't believe
23 there's any -- and I'll verify this for trial, that
24 there's no restrictions regarding contact with his own
25 children.

5

| | |
|---|---|
| 1 | THE COURT: All right. Second question |
| 2 | is, these children I think are six and eight I want to |
| 3 | say. I think I'm close on that. |
| 4 | ATTORNEY BODENE: Yes, Your Honor. |
| 5 | THE COURT: At trial presumably I would |
| 6 | interview the eight-year-old. Six is that kind of gray |
| 7 | area. Does counsel think I should interview none of |
| 8 | the children, both of the children, or just the |
| 9 | eight-year-old? Let's ask it that way. We'll start |
| 10 | with you, Attorney Harshberger. |
| 11 | ATTORNEY HARSHBERGER: I'm open to |
| 12 | anything, Your Honor. I'm open to interviewing. I'm |
| 13 | open to not interviewing. I haven't talked to Bruce |
| 14 | regarding if he has a strong feeling one way or |
| 15 | another. |
| 16 | THE COURT: Attorney Bodene? |
| 17 | ATTORNEY BODENE: Same position, Your |
| 18 | Honor. Whatever Your Honor feels is best for the |
| 19 | children. |
| 20 | THE COURT: All right. I'll interview |
| 21 | the eight-year-old and not the six-year-old. |
| 22 | ATTORNEY BODENE: And if I may just, |
| 23 | Your Honor, on that point, something that my client |
| 24 | would like to reserve for trial. Two issues, the issue |
| 25 | of grandfather's standing as intervenor. And secondly, |

6

1  whether the eight-year-old should in fact be covered by
2  these proceedings given that the eight-year-old was not
3  the biological child of father and father acknowledges
4  that.
5         THE COURT: Well, number one, I'm
6  assuming but please, Attorney Bodene, tell me if I'm
7  wrong, that the eight-year-old doesn't know his
8  biological father and, therefore, considers Mr. Hexter
9  to be his father. Am I correct on that?
10        ATTORNEY BODENE: Actually, Your Honor,
11 I don't think that's the case. I did ask my client
12 that question. She could eliminate that further if you
13 wish.
14        THE COURT: Well, we can cover that in
15 trial. I was just trying to -- so relative to
16 standing, grandfather is asking only bare-bones
17 grandparents rights under 5325. Tell me why
18 grandfather wouldn't have standing under 5325 since
19 there have been custody proceedings and the parties
20 don't agree on whether the grandfather should have any
21 custodial right looks? That looks like a slam dunk to
22 me for standing, but tell me if I'm wrong.
23        ATTORNEY BODENE: Your Honor, I don't
24 have a legal basis for stating that you're wrong at
25 this point. It's a matter that my client and I have

7

```
 1   discussed and we have not resolved at this point so I
 2   leave it to Your Honor.
 3               THE COURT:  Put it in the -- my law
 4   clerk is preparing a five page Order for how to prepare
 5   for trial.  In it will be, I'm going to interview the
 6   eight-year-old, not the six-year-old.  In it will be
 7   how to exchange exhibits, et cetera, et cetera, when
 8   the trial will be, which we will get to in just a
 9   second.  But I'm putting in that Order, number one,
10   that the grandfather -- what is the grandfather's name?
11               ATTORNEY HARSHBERGER:  Bruce Hexter.
12               THE COURT:  Bruce Hexter, that he does
13   have standing under Section 5325 only.  And, therefore,
14   should be added to the caption, but that mother's
15   question of the older child and the father's
16   relationship thereto since he apparently is not the
17   biological father, that is reserved for trial.
18               So this certainly should be able to get
19   done in a half a day, so let's go off the record.
20   Counsel, get your calenders and we'll see when we have
21   a half a day for this.
22               ATTORNEY HARSHBERGER:  Your Honor, I
23   just want to be clear, given since 2018 this custody
24   Order has been in effect for both children, mother now
25   is trying to remove that child or one of the child --
```

1    this one child, the older child, from said Order?
2             THE COURT:  Well, you make a good point,
3    and I'm not going to -- I'm not prejudging but I'm also
4    not going to beat around the bush here.  The question
5    is whether father here is psychological father in loco
6    parentis or father by estoppel whatever, you want to
7    call it relative to this older child, I'm not going
8    beat around the bush here, mother is going to have the
9    burden of showing me that that is not the case, because
10   one of those three documents is probably going to come
11   into play here, but we are reserving that for trial.
12            And bare in mind, both counsel, that
13   when it comes to this kind of situation, a trial courts
14   sole criteria is the best interest of the child.  So if
15   I find it's in the best interest of this child to
16   consider this father as his father, what we call it,
17   really doesn't matter.  So don't burn a lot of time
18   researching a lot of cases on parenthood by estoppel or
19   whatever because it's going to be mother's burden to
20   convince me that it's not in the best interest of this
21   child to have this father be considered this child's
22   psychological father particularly since I'm assuming
23   but, Attorney Bodene, can correct me if I'm wrong, we
24   don't even know who the bio-father is.
25            ATTORNEY BODENE:  I will reserve that

```
 1   for trial, Your Honor.
 2               THE COURT:  Assuming for a moment that
 3   mother doesn't even know who the bio-father is, we
 4   instantly have -- the doctrine come into play that it's
 5   better for a child to have a father than to not have a
 6   father at all.  But again, the burden will be on
 7   mother, but we're reserving it for trial.
 8               Did that answer your question, Attorney
 9   Harshberger?
10               ATTORNEY HARSHBERGER:  Yes, Your Honor.
11               THE COURT:  Get your calenders out.
12   We'll go off the record.
13                         *   *   *
14               (Whereupon, a discussion was held off
15   the record.)
16                         *   *   *
17               THE COURT:  April 7th at 9:00 a.m.
18   You'll be getting a copy of the Order shortly.
19   Attorney Bodene will walk out with one.  You'll get one
20   mailed to you by the prothonotary but it will have the
21   day, time, and place.  Counsel and parties, obviously
22   except father, must be in person, other witnesses may
23   be by Zoom and if father cares to participate, he
24   certainly may participate by Zoom.  So, Attorney
25   Harshberger, if want father to participate, you'll have
```

1  a Zoom link but you'll have to make arrangements with
2  the state correctional institution for him to
3  participate by Zoom. You probably already know that's
4  not going to be fun on your part, but I'll leave that
5  up to you.
6              ATTORNEY HARSHBERGER: And, Your Honor,
7  if I may, due to SCI's restrictions, if I need to file
8  a continuance based upon their availability, is there
9  any problem with doing that in the near future?
10             THE COURT: I would see no reason why we
11 would refuse such a continuance request.
12             ATTORNEY HARSHBERGER: Thank you.
13             THE COURT: All right. Anything else I
14 should know? Any other questions?
15             ATTORNEY BODENE: Your Honor, if I may,
16 just one thing I wanted to highlight from our pre-trial
17 statement was that even though the risk of harm issue
18 has on its face been addressed by Judge Kline, under
19 5328 of the statute, we would reserve the right -- I'm
20 sorry, under 5329 rather, we would reserve the 5328
21 just under the normal custodial factors to address that
22 just for a formal best interest standard just for Your
23 Honor's consideration for trial.
24             THE COURT: I understand. And candidly,
25 the issue of being a risk of harm, is not only a bit

1  amorphus, it can be somewhat changing so -- but that's
2  really not much of an issue for four years any way.
3            ATTORNEY HARSHBERGER:  I object to any
4  kind of testimony regarding risk of harm or possible
5  risk of harm as I don't believe, number one, it would
6  be right.  He's not out of prison for four more years
7  at minimum and it was already previously ruled that he
8  was not get a risk of harm.  So if mother would like
9  the modify -- it's actually father's burden to modify
10 the current custody Order out of Lebanon which grants
11 mother sole legal and primary physical custody,
12 essentially sole physical custody because father's
13 incarcerated.
14           So upon exiting the SCI facility, mom
15 could then bring in these arguments that he is now
16 after rehabilitation in SCI a risk of harm, but I
17 believe trying to find him a risk of harm now would be
18 not be right and too soon after a risk of harm was
19 already determined that he wasn't.
20           THE COURT:  Well, obviously I was not
21 clear enough.  I was trying to say what you said, in
22 fewer words I might add, but I was trying to say what
23 you said.  I'm not going to be hearing testimony
24 whether he's a risk of harm now or not.  Clearly, he
25 cannot have any custodial rights and I want to make it

```
 1   clear that if I give grandfather custodial rights,
 2   whatever they may be, it will be conditioned that he is
 3   not to take the child to the SCI to see the father.
 4                ATTORNEY BODENE:  Thank you.
 5                THE COURT:  So with that in mind, by the
 6   way, counsel, this is a case you really ought to be
 7   able to settle.  Father can have some phone rights.
 8   Grandfather is probably going to get maybe a weekend
 9   every two months, maybe some time over Christmas, maybe
10   Thanksgiving, maybe a week in the summer, but only
11   starting in the summer of 2023.
12                And, again, any time the grandfather
13   would have the children, the children would not be able
14   to visit the father -- the grandfather will not be able
15   to take the children to see the can father at SCI.  So
16   you kind of know where I'm leaning, so I'm giving you
17   some guidance maybe to settle this between now and
18   April 7th.
19                ATTORNEY HARSHBERGER:  And --
20                THE COURT:  Let me also just say,
21   Attorney Bodene, so that you know, while I hear the
22   argument that the children haven't had a close
23   relationship with their grandfather, particularly not
24   recently, whatever, whatever, the chances of my giving
25   grandfather zero custodial rights, probably not good at
```

```
 1   all.  He's going to get something.
 2              ATTORNEY BODENE:  Understood.
 3              THE COURT:  But, again, with that
 4   condition that he can't take the children to the SCI to
 5   see father.  See if you can settle this case between
 6   now and April 7th, counsel.
 7              ATTORNEY BODENE:  Thank you, Your Honor.
 8              ATTORNEY HARSHBERGER:  I'm not sure
 9   we're under the docket what is still pending on either
10   side.  There was a bunch of contempts filed in Lebanon
11   and cross contempts and --
12              THE COURT:  Well, that's a good
13   question.
14              ATTORNEY HARSHBERGER:  I'm okay with --
15   and I proposed this to attorney -- her prior counsel,
16   dad is now incarcerated and so my argument would be
17   that it's moot for any kind of contempt regarding the
18   parents.  And grandfather is not going to try to, you
19   know, step in and say, well, I'm going to fill in for
20   father's time for those contempts.  I would withdraw
21   our contempt and mom would withdraw hers and we would
22   have this solely based upon what time grandfather could
23   and should be awarded.
24              THE COURT:  That's a great question.
25   Attorney Bodene, it does sound look the contempts are
```

1  moot.

2  ATTORNEY BODENE: Agreed, Your Honor. I
3  did discuss that with my client and she's fine with
4  mutually withdrawing all contempt issues.

5  THE COURT: Now that we made the copies
6  and everything, would you just change it?

7  ATTORNEY HARSHBERGER: Sorry.

8  THE COURT: No. It was a good question.
9  I wish you brought it up a little sooner, but frankly
10 I'm the one who should have asked, so thank you. You
11 caught what I didn't. I appreciate that, Attorney
12 Harshberger.

13 ATTORNEY HARSHBERGER: I just want to
14 limit the trial down to the bare-bones necessary.

15 THE COURT: Me too. Add this sentence
16 at the end that simply says all contempt petitions are
17 withdrawn so the trial will be only custody.

18 So you take your copy, Attorney Bodene,
19 and throw it way.

20 ATTORNEY BODENE: Your Honor, I don't
21 need a new one. I will acknowledge that it is imputed.

22 THE COURT: All right. So is there
23 anything else I've missed, counsel?

24 ATTORNEY BODENE: No, Your Honor.

25 ATTORNEY HARSHBERGER: I don't believe

```
 1  so, Your Honor.  Thank you.
 2              THE COURT:  All right.  Very good.
 3  Attorney Bodene has an almost accurate copy for himself
 4  and yours will be mailed to you, attorney Harshberger.
 5  That does conclude the pre-trial conference.  I
 6  appreciate the pre-trial memorandum.  They were both
 7  very helpful so everyone is excused.  Thank you.  See
 8  you April 7th or maybe not.
 9              ATTORNEY BODENE:  Thank you very much,
10  Your Honor.
11              THE COURT:  Thank you.
12                      *   *   *
13          (Whereupon, the hearing was concluded.)
14                      *   *   *
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T I O N
 2
 3           I hereby certify that the proceedings and
 4      evidence are contained fully and accurately in the
 5      notes taken by me on the hearing of the above cause,
 6      and that this copy is a correct transcript of the same.
 7
 8
 9
10
                                    _Emily Riccardi_____
11                                  EMILY M. RICCARDI
                                    Official Court Reporter
12
```