IN THE COURT OF COMMON PLEAS OF YORK COUNTY,

PENNSYLVANIA

| | | |
|---|---|---|
| SARA PICKETT | : | No. 2021-FC-001007-03 |
| | : | |
| VS | : | |
| | : | |
| KRISTOPHER HEXTER AND | : | |
| BRUCE HEXTER, | : | |
| INTERVENOR | : | |

(Contempt Hearing)

York, Pa., Monday, July 17, 2023

Before the Honorable N. Christopher Menges, Judge

APPEARANCES:

        Thomas W. Gregory, Esquire
        For the Plaintiff

        Brandy G. Hoke, Esquire
        For the Defendant and Intervenor

13:56:34
13:56:34

\*   \*   \*

TRANSCRIPT OF PROCEEDINGS

Reported by:

Sherri A. Reitano, RPR
Official Court

Ex 6

# INDEX TO WITNESSES

FOR THE DEFENDANT/INTERVENOR                    PAGE

Bruce Hexter

   Direct Examination by Attorney Hoke              17

   Cross-Examination by Attorney Gregory           25

   Redirect Examination by Attorney Hoke           --

   Recross-Examination by Attorney Gregory         --


FOR THE PLAINTIFF:                             PAGE

Sara Pickett

   Direct Examination by Attorney Gregory          30

   Cross-Examination by Attorney Hoke              33

   Redirect Examination by Attorney Gregory        --

   Recross-Examination by Attorney Hoke            --

PROCEEDINGS HELD ON MONDAY, JULY 17, 2023

* * *

THE COURT:  Good afternoon.  I'm curious why we have so many people on Zoom.

ATTORNEY GREGORY:  They are supporters of mother I believe.

THE COURT:  It's an open courtroom. They are certainly more than entitled to watch.  All right.

Before we start taking testimony, mother has filed a number of pleadings and I want to get the record straight since some of them were duplicative.

Mother has filed a motion to dismiss the contempt and a modification, as well as an amended motion to dismiss, as well as a second amended motion to dismiss.  And all of those are denied because they were already ruled upon when the Court ruled on intervention and standing which the Court, of course, found that father -- grandfather -- paternal grandfather does have standing and, of course, he has intervened.

Further, mother filed a motion for discovery.  The Court has granted that and has signed an order granting the motion for discovery and is going

| | |
|---|---|
| 13:58:12 1 | to have the tipstaff make a copy of that order for |
| 13:58:15 2 | everyone.  Please make a copy of that for everybody |
| 13:58:17 3 | here. |
| 13:58:32 4 | So I think we are now to the point where |
| 13:58:38 5 | we can hear grandfather's petition for contempt -- |
| 13:58:41 6 | although before we do that actually, back on May 9, |
| 13:58:46 7 | 2023, the Court found mother in contempt for not paying |
| 13:58:54 8 | grandfather a reimbursement of $150 for Our Family |
| 13:58:58 9 | Wizard. |
| 13:58:58 10 | In the process of all of these |
| 13:59:00 11 | pleadings, it has come to the Court's attention that |
| 13:59:08 12 | mother was ordered to use Our Family Wizard but was not |
| 13:59:11 13 | ordered to reimburse paternal grandfather the $150.  So |
| 13:59:16 14 | the Court is correcting that.  Mother is not in |
| 13:59:20 15 | contempt for not paying the $150 because she was never |
| 13:59:24 16 | ordered to pay that. |
| 13:59:26 17 | So we are here on grandfather's petition |
| 13:59:29 18 | for contempt.  Attorney Hoke, are you ready? |
| 13:59:33 19 | ATTORNEY HOKE:  I'm ready. |
| 13:59:33 20 | ATTORNEY GREGORY:  Your Honor -- |
| 13:59:33 21 | THE COURT:  Attorney Gregory, sure, go |
| 13:59:34 22 | ahead. |
| 13:59:35 23 | ATTORNEY GREGORY:  I'm late to the game |
| 13:59:36 24 | compared to everybody else. |
| 13:59:37 25 | THE COURT:  Understood. |

4

13:59:37 1    ATTORNEY GREGORY:  So if I misstate

13:59:40 2  something, I apologize.  I've spoken to mom.  And

13:59:43 3  obviously mom's position continues to be that this

13:59:45 4  Court erred with respect to standing.

13:59:48 5    And to be honest when I looked through

13:59:49 6  past orders, I never really saw where the Court

13:59:51 7  actually made an order with respect to standing.

13:59:54 8  Because you had the June of 2022 where you set forth

14:00:00 9  certain custody rights.  You then scheduled another

14:00:01 10  hearing for September.  They appealed that because

14:00:05 11  there was supposed to be another hearing in December.

14:00:07 12  The Superior Court said there is -- you know, we don't

14:00:12 13  have jurisdiction of this.

14:00:14 14    And then the Court ended up not having

14:00:17 15  the December hearing because of that.  So I don't -- I

14:00:21 16  don't know when mom ever really had the opportunity to

14:00:24 17  dispute the standing with the Superior Court.  If I'm

14:00:27 18  wrong, again, obviously I have no issue being

14:00:30 19  corrected.  So I want to raise that.

14:00:32 20    But the second issue that mother has is

14:00:36 21  with respect to the petition filed on behalf of

14:00:39 22  grandfather, mother has requested or has said to me

14:00:46 23  that inappropriate communications are being made in

14:00:51 24  front of the children and the way to obtain information

14:00:54 25  is this -- is to get records.  Because when grandfather

14:00:58 1  had custody of the children for exercising his custody

14:01:01 2  rights, he would get father on the phone from prison

14:01:04 3  and they would talk about things and say things like we

14:01:07 4  are going to get mom to go to jail and things of that

14:01:10 5  nature.

14:01:10 6          I don't have -- I have not had an

14:01:12 7  opportunity to obtain prison records which goes to

14:01:14 8  whether somebody wilfully failed to comply with an

14:01:17 9  order.  So to that extent, I'm requesting a

14:01:20 10 continuance.

14:01:21 11         I would also note that, and again with

14:01:24 12 respect to the May 9 order, since that order has been

14:01:28 13 appealed, I would argue as to whether or not this Court

14:01:33 14 has jurisdiction to deal with anything with respect to

14:01:36 15 the May 9 order since that is before the Superior

14:01:40 16 Court.

14:01:41 17         THE COURT:  I didn't think there was

14:01:42 18 anything in front of the Superior Court.

14:01:44 19         ATTORNEY GREGORY:  Yeah.  So she

14:01:46 20 appealed the May 9 order.  So that is pending before

14:01:50 21 the Superior Court.

14:01:52 22         THE COURT:  The May 9, 2023?

14:01:56 23         ATTORNEY GREGORY:  Correct.

14:01:56 24         ATTORNEY HOKE:  Correct.

14:01:58 25         ATTORNEY GREGORY:  When you were -- had

a hearing in May and found mom to be in contempt.

THE COURT:  Right.

ATTORNEY GREGORY:  Mom filed an appeal from that.  That is still pending before the Superior Court.  As of my understanding, that is the only thing that is now pending before the Superior Court in this matter.

Again, when I spoke to mom about the issue with standing, as I say, an appeal wasn't filed to the June 2nd, 2022, order because the Court said they were coming back in September.  In September you entered an order and you said, mom, if you want to appeal, you can but we are coming back here in December.

Well, the Superior Court has since said in March of this year since you said we were coming back in December, there is no jurisdiction.  So they would not address mom's issues.  So then -- but when you came back in December because that appeal was pending, you cancelled the hearing.  So I'm not really sure when mom had an opportunity to address the standing issue with the appellate court.

THE COURT:  All right.  Attorney Hoke, what do you have to say to that?

ATTORNEY HOKE:  Starting with the

14:03:02  1    June 2nd --

14:03:03  2                THE COURT:  Please talk into the

14:03:03  3    microphone.  I could barely hear Attorney Gregory.

14:03:05  4                ATTORNEY HOKE:  Starting with the

14:03:07  5    June 2nd, 2022, order, contempt allegations that are

14:03:10  6    pending before the Court stem from that order as well,

14:03:13  7    not just the last order from May when we were here.  So

14:03:16  8    there are still some claims that can move forward.

14:03:19  9                Regarding mother's rights to appeal,

14:03:22 10    grandfather was given grounds back on June 2nd of 2022.

14:03:26 11    Mother could have appealed that order at the time and

14:03:28 12    she did not.

14:03:41 13                THE COURT:  And it seems to me -- I'm

14:03:42 14    thinking out loud.  I know that is dangerous.  But it

14:03:47 15    seems to me that with the prior finding of contempt in

14:03:51 16    front of the Superior Court, that might make a

14:03:56 17    difference in any sanction I would impose if I find

14:04:01 18    mother in contempt today.  Because obviously it would

14:04:04 19    depend on whether it is a first or second contempt.

14:04:07 20    But I don't see where that is relevant to the contempt

14:04:09 21    itself.  Attorney Gregory, tell me where I'm wrong.

14:04:13 22                ATTORNEY GREGORY:  I would argue that in

14:04:14 23    your -- in the May order, you imposed additional

14:04:18 24    conditions which were not part of the June 2022 order.

14:04:25 25    For example, I believe in the May order, you said mom

8

has to I think buy a telephone or something to that extent. If I'm wrong, please correct me. That wasn't in the order back in June. So I don't know if that is appropriate to be considered for purposes of today.

ATTORNEY HOKE: For our purposes of today, what we are focusing on is there was custody periods given to grandfather under the June 2nd, 2022, order that mother denied him. And further, he was given rights of phone contact with the child which, again, mother has denied him. All that goes back to the June order.

THE COURT: Let's just for a moment skip to the heart of this. When is the last time grandfather had these children for his Saturday time?

THE GRANDFATHER: Last time I had the children was on May 27th.

THE COURT: Of 2023?

THE GRANDFATHER: 2023.

THE COURT: So, Attorney Gregory, perhaps we can take testimony today on at least that.

ATTORNEY GREGORY: I --

THE COURT: Go ahead, Attorney Gregory. No, go ahead.

ATTORNEY GREGORY: But if mother's position is that the child or children came back and

14:05:36 1    said this is what happened at that and we -- she has

14:05:42 2    then taken the children to a therapist -- but the

14:05:47 3    children are actually outside of the courtroom.

14:05:51 4    Obviously, you can talk to the children.  But the

14:05:53 5    thought is if the children -- again, I haven't heard

14:05:55 6    those phone calls.  But if the children are saying

14:06:00 7    grandpa, pop pop, is talking to dad and saying we are

14:06:03 8    going to get mom to go to jail and things of that

14:06:04 9    nature, he can dispute that.  But if I'm given time to

14:06:08 10   see if there is phone records, he can't dispute or she

14:06:12 11   can't say depends on what is in the records.  And I

14:06:15 12   don't have that.

14:06:16 13          And obviously just being appointed

14:06:18 14   approximately ten days ago and communicating with mom,

14:06:21 15   I have not had an opportunity to do that.

14:06:23 16          THE COURT:  But how does -- let's assume

14:06:27 17   for a minute that grandfather and/or father said -- did

14:06:31 18   something inappropriately at a visit, how is that a

14:06:35 19   defense to contempt?

14:06:37 20          ATTORNEY GREGORY:  Because in order to

14:06:38 21   be held in contempt, there has to be a willful failure

14:06:40 22   to comply with an order.  If something happened during

14:06:44 23   a visit which has a negative impact on the children,

14:06:47 24   then she is acting in the best interest of the children

14:06:50 25   not doing it.  So, therefore, then it is not a willful

14:06:53  1   failure to comply because she is acting in the best

14:06:56  2   interest of the children.

14:06:57  3           ATTORNEY HOKE:  I don't agree with that

14:06:58  4   Your, Honor.

14:06:58  5           THE COURT:  And I don't agree with that.

14:06:59  6   Go ahead.

14:07:00  7           ATTORNEY HOKE:  I don't agree with that.

14:07:02  8   Mother has no problem filing things with the court.

14:07:05  9   She has demonstrated that.  She could have filed for

14:07:06 10   special relief.  She could have filed for contempt.

14:07:08 11   She could have done a number of things to remedy the

14:07:11 12   situation if she was concerned for the children's

14:07:13 13   well-being.  We don't engage in self-help.

14:07:16 14           ATTORNEY GREGORY:  Although I've been in

14:07:17 15   other cases where -- obviously, this is a different

14:07:20 16   fact scenario.  So I'm not saying this happened here.

14:07:22 17   If a parent comes to court for a custody right and is

14:07:25 18   under the influence and Your Honor says I'm not going

14:07:27 19   to let you see the child, the Court doesn't have a

14:07:29 20   problem with that.  She is acting in the best interest

14:07:31 21   of the children here.

14:07:32 22           THE COURT:  I don't agree with you on

14:07:33 23   that actually.  I remember --

14:07:36 24           ATTORNEY GREGORY:  There --

14:07:36 25           THE COURT:  -- one federal judge very

14:07:39  1   specifically I can remember saying if the parent shows

14:07:45  2   up inebriated for a visit, call the police and let them

14:07:49  3   deal with it.

14:07:50  4              Because, you know, the -- that parent's

14:07:54  5   opinion -- the other's parent opinion is inebriated

14:07:59  6   or is impaired, you know, isn't enough.  And so I'm

14:08:02  7   not -- I can't even agree with your fundamental

14:08:05  8   premise.

14:08:06  9              ATTORNEY GREGORY:  If you don't believe

14:08:07 10   there is ever a situation where a person thinks it is

14:08:09 11   in the best interest of a child not to go over that is

14:08:13 12   valid, then I don't know what else I can say.  There is

14:08:15 13   going to be a situation where that is -- again, I'm not

14:08:19 14   in a position to tell you what any telephone calls said

14:08:21 15   because I wasn't there.  I have not heard anything.

14:08:24 16              ATTORNEY HOKE:  And, again, I would also

14:08:26 17   remind the Court there was testimony at the last

14:08:28 18   hearing that mother has done the exact same thing that

14:08:31 19   she is accusing grandfather and father of doing and was

14:08:34 20   found in contempt for doing so.

14:08:36 21              THE COURT:  Cutting through all of that,

14:08:41 22   my number one concern is simply that the order of court

14:08:45 23   be obeyed and that these children go to see their

14:08:48 24   grandfather on the Saturdays that they are supposed to

14:08:50 25   see their grandfather.

14:08:53  1          What I don't like right from the

14:08:55  2  beginning is the fact these children haven't seen their

14:08:58  3  grandfather since May 27th.  If he or father said or

14:09:03  4  did something inappropriately, there are other

14:09:05  5  remedies.  Withholding these children now for almost

14:09:09  6  two months from seeing their grandfather is not one of

14:09:11  7  them.

14:09:11  8          So I'm going to take testimony at least

14:09:14  9  on why grandfather hasn't seen these children since May

14:09:17 10  27th, 2023.  We may come back on some other things,

14:09:29 11  Attorney Gregory.  But I at least want to take

14:09:32 12  testimony on that much at the very least.

14:09:35 13          ATTORNEY GREGORY:  With respect to --

14:09:35 14          THE COURT:  Go ahead.

14:09:36 15          ATTORNEY GREGORY:  With respect to my

14:09:36 16  order of appointment, I don't want to prohibit mom --

14:09:39 17  I'm not involved in the whole custody thing.  So,

14:09:41 18  therefore, I was appointed but I don't -- what happened

14:09:45 19  was when mom filed something, then the Superior Court

14:09:47 20  never sent it to me.  I'm not getting involved in that.

14:09:51 21          I mean I'm here for purposes of what we

14:09:53 22  are doing today.  So I just want the Court to place on

14:09:55 23  the record so that mom is not hamstrung by not being

14:09:58 24  able to file certain documents.  I'm only here with

14:10:02 25  respect to that.

14:10:02  1    THE COURT:  I will be glad to put on the
14:10:02  2  record you're here only for the contempt.  And, of
14:10:06  3  course, the Court appointed you on the contempt because
14:10:10  4  there is a possibility mother could be incarcerated.
14:10:12  5  And it is this Court's view of the law that if that
14:10:16  6  possibility is there, she is entitled to
14:10:19  7  representation.  Hence, why the Court has appointed
14:10:22  8  you.  But it is only for contempt.  You're right.
14:10:26  9    Has -- by way of information, has
14:10:32 10  grandfather filed for conciliation on the mod yet?
14:10:36 11    ATTORNEY HOKE:  We have, Your Honor.
14:10:37 12  Well, Attorney Harshberger has conciliation scheduled
14:10:40 13  for Wednesday I believe.
14:10:42 14    THE GRANDFATHER:  Yes.
14:10:42 15    ATTORNEY HOKE:  For Wednesday.
14:10:44 16    THE COURT:  Okay.  This Wednesday,
14:10:50 17  the 19th?
14:10:50 18    ATTORNEY HOKE:  The 19th.
14:10:52 19    THE GRANDFATHER:  At 3 p.m.
14:10:53 20    THE COURT:  Okay.  Okay.  So let's take
14:11:00 21  testimony on at least why these children haven't seen
14:11:05 22  their pop pop since May 27th, 2023.  Attorney Hoke.
14:11:12 23    ATTORNEY HOKE:  All right.  I will call
14:11:13 24  Bruce Hexter.
14:11:14 25    THE COURT:  Come on up here to the

14:11:15  1    witness stand please and the clerk will swear you in.

14:11:37  2                            *   *   *

14:11:37  3                        BRUCE HEXTER,

14:11:37  4                     called as a witness

14:11:37  5              having been duly sworn according to law,

14:11:37  6                     testified as follows:

14:11:43  7                            *   *   *

14:11:43  8                THE CLERK:  Please be seated.  Please

14:11:50  9    state and spell your first and last name.

14:11:52 10                THE WITNESS:  Bruce Hexter.  Bruce

14:11:55 11    Hexter, B-r-u-c-e, H-e-x-t-e-r.

14:11:58 12                THE COURT:  Before we go any further,

14:12:01 13    Attorney Hoke, I do want make to clear that this Court

14:12:06 14    does believe that its order of May 9, 2023, granted

14:12:11 15    standing to grandfather and enabled him to intervene

14:12:20 16    and he has been a party since.  So go ahead, Attorney

14:12:25 17    Hoke.

14:12:25 18                ATTORNEY GREGORY:  You're saying that

14:12:27 19    the contempt hearing on May -- because, again, I'm

14:12:31 20    looking through the information that Attorney

14:12:34 21    Harshberger sent me a copy of a couple of the orders.

14:12:36 22    So you're saying that the order entered May 9th is how

14:12:40 23    you're saying addressed the standing issue?

14:12:45 24                THE COURT:  Well, if not, that and

14:12:47 25    possibly an earlier one that --

14:12:50  1        ATTORNEY GREGORY:  I'm just saying

14:12:50  2  because she did appeal the May 9th order.  So I just

14:12:53  3  want to state I believe then standing -- if that is

14:12:57  4  where standing was finally addressed -- I'm not saying

14:13:04  5  finally.  I just mean putting it in an order.

14:13:04  6        THE COURT:  I believe it was also

14:13:05  7  addressed again on the June 2, 2022.

14:13:17  8        ATTORNEY GREGORY:  The June order is

14:13:18  9  four pages in length.  Mom thinks she did possibly at

14:13:30 10  the September 6th order which is when you told her she

14:13:32 11  can go ahead and appeal and she did appeal but the

14:13:34 12  Superior Court then would not address it.

14:13:37 13        THE COURT:  All right.  In any event, it

14:13:41 14  probably has been found a couple of times but --

14:13:44 15        ATTORNEY HOKE:  I would note, Your

14:13:45 16  Honor, that the June 2nd, 2022, order does say in it

14:13:49 17  this is a final order and under that is where

14:13:53 18  grandfather was given rights.  If mother was to appeal

14:13:57 19  grandfather having standing to the children, she should

14:14:00 20  have appealed it after that order.

14:14:02 21        THE COURT:  Yes.

14:14:03 22        ATTORNEY GREGORY:  I would just note

14:14:04 23  that you also at the June 2nd order scheduled a

14:14:08 24  follow-up hearing and then the September 6 order you

14:14:12 25  scheduled a follow-up.  And that's exactly why the

14:14:13  1    Superior Court did not feel that it was a final order.

14:14:17  2    So if in your June 2nd order you scheduled a

14:14:20  3    follow-up -- I don't know.  I'm just saying based on

14:14:22  4    this -- it is very possible had she appealed that, the

14:14:25  5    Superior Court would have said that's not a final order

14:14:28  6    either because there's a follow-up.

14:14:29  7              ATTORNEY HOKE:  I don't believe that the

14:14:30  8    follow-up hearings make it not a final order with

14:14:33  9    relation to standing.  It is a final order in relation

14:14:35 10    to the custody schedule and the rights that grandfather

14:14:37 11    was given under that order, not that issue of standing.

14:14:42 12              THE COURT:  All right.  All of that is

14:14:43 13    wonderful fodder for legal argument.  Let's take our

14:14:47 14    testimony.  Go ahead, Attorney Hoke.

14:14:48 15              ATTORNEY HOKE:  Very good.

14:14:48 16                        *    *    *

14:14:49 17                    DIRECT EXAMINATION

14:14:51 18    BY ATTORNEY HOKE:

14:14:51 19         Q.   Mr. Hexter, per the June 2nd, 2022, order

14:14:55 20    what custody rights do you have, what is the schedule

14:14:57 21    that you have with the children?

14:14:58 22         A.   As far as I remember on that date, that's

14:15:02 23    when the Judge said I get to call the children the

14:15:06 24    first, the third, and if there was a fifth Monday at

14:15:10 25    6 p.m.  And then I would also get the children on the

| | |
|---|---|
| 14:15:15 | 1 |
| 14:15:20 | 2 |
| 14:15:22 | 3 |
| 14:15:24 | 4 |
| 14:15:28 | 5 |
| 14:15:30 | 6 |
| 14:15:31 | 7 |
| 14:15:33 | 8 |
| 14:15:34 | 9 |
| 14:15:40 | 10 |
| 14:15:41 | 11 |
| 14:15:43 | 12 |
| 14:15:47 | 13 |
| 14:15:48 | 14 |
| 14:15:53 | 15 |
| 14:15:54 | 16 |
| 14:15:56 | 17 |
| 14:15:59 | 18 |
| 14:16:01 | 19 |
| 14:16:01 | 20 |
| 14:16:04 | 21 |
| 14:16:08 | 22 |
| 14:16:09 | 23 |
| 14:16:11 | 24 |
| 14:16:11 | 25 |

second and fourth Saturday of every month from 9 a.m. until 7 p.m.

Q.   You had just testified several minutes ago since the last time we were in court on May 9, 2023, the last time you had the children was May 27th?

A.   Correct.

Q.   Okay.  That was a Saturday, correct?

A.   Correct.

Q.   Since May 27th, 2023, how many times have you spoken to the children on the phone?

A.   Zero.

Q.   How many times have you reached out to Ms. Pickett requesting to speak with the children?

A.   Every Monday.  I was allowed to the first, the third, and the fifth Monday.

Q.   Do you call and ask or do you text?

A.   I called and got no answer.  I sent texts.

Q.   Has she responded to either one?

A.   Nothing.

Q.   On the following week which would have been your next period of custody was June 10th?

A.   June 10th, correct.

Q.   Okay.  Where do you and mother typically exchange the children?

A.   In front of the -- where she was supposedly

14:16:16  1    living which was 278 Coventry at Waterford in York.

14:16:24  2        Q.   Okay.  And at the last hearing, do you recall

14:16:28  3    mother verifying that that was her address?

14:16:30  4        A.   She said, yes, she was still living there.

14:16:33  5        Q.   Okay.  So you went on June 10th to pick up

14:16:35  6    the children?

14:16:36  7        A.   Correct.

14:16:36  8        Q.   Were the children there?

14:16:37  9        A.   They were not there at all.

14:16:39 10        Q.   Was mother there?

14:16:40 11        A.   She was not there.

14:16:41 12        Q.   Okay.

14:16:42 13        A.    I knocked on her door and I knocked on the

14:16:44 14    neighbor's door where she the past couple months had

14:16:48 15    been coming out of which was 280 I believe was the

14:16:51 16    address and the guy's name was Mike.  I don't know the

14:16:54 17    last name.  And there was no answer at that door.

14:16:59 18             Next thing you know, one of the

14:17:00 19    neighbors came out from their house which was right

14:17:05 20    next to I believe it is 277, she came out carrying some

14:17:09 21    trash.  I said, have you seen Sara and the kids?

14:17:16 22             ATTORNEY GREGORY:  I'm going to object

14:17:16 23    if he's going to give hearsay testimony.

14:17:19 24             THE COURT:  Well --

14:17:22 25             ATTORNEY GREGORY:  Because it goes to

14:17:23  1    the truth of the matter asserted I believe.

14:17:24  2             ATTORNEY HOKE:  Goes to whether or not

14:17:27  3    mother resided there, not whether or not she turned

14:17:30  4    over the children there.

14:17:34  5             ATTORNEY GREGORY:  It is hearsay.

14:17:35  6             ATTORNEY HOKE:  I think it goes to the

14:17:36  7    best interest of the children.  Mother has moved around

14:17:38  8    and not told anybody where she is at with the children.

14:17:42  9             THE WITNESS:  When I asked the

14:17:43 10    neighbor --

14:17:43 11             THE COURT:  Wait.  The question or

14:17:47 12    statement that you objected to, Attorney Gregory, is

14:17:51 13    have you seen Sara and the kids?

14:17:54 14             ATTORNEY GREGORY:  He's about to say

14:17:55 15    what somebody else told him.  It's hearsay.

14:17:58 16             THE WITNESS:  I asked them whether they

14:18:00 17    had seen them.

14:18:00 18             THE COURT:  I'll allow it not for the

14:18:02 19    truth of the matter asserted.  I will not allow it for

14:18:04 20    that.  I will allow it simply to try to show his state

14:18:10 21    of mind as far as whether or not mother was living at

14:18:14 22    this particular address or not.  So go ahead and

14:18:18 23    answer.  You probably forgot what the question was but

14:18:21 24    go ahead.

14:18:21 25             THE WITNESS:  When I asked the neighbor

14:18:23  1    have you seen them and the neighbor actually said, no,

14:18:26  2    I haven't.  I think she moved out a while back -- a

14:18:30  3    while ago.

14:18:31  4                    THE COURT:  That part I will also ignore

14:18:34  5    before you say anything, Attorney Gregory.  Go ahead.

14:18:34  6    BY ATTORNEY HOKE:

14:18:37  7        Q.    Did you follow-up with mother upon finding

14:18:39  8    out her and the children were not there?

14:18:41  9        A.    At that time, I sent a message to her on

14:18:44 10    text.  And I said, where are you?  I heard -- then I

14:18:46 11    said, I know you moved.  Where are you at?  I got no

14:18:50 12    response from that.

14:18:52 13                    And then later that day, I called the

14:18:54 14    police and asked them if they would do a child welfare

14:18:56 15    check.  They went to the house and knocked on 278 and

14:19:02 16    the gentleman where she was living with was Tony, the

14:19:05 17    guy's name was Tony, answered the door.  And he told

14:19:09 18    the police --

14:19:11 19                    ATTORNEY GREGORY:  Again, I'm going to

14:19:12 20    object for the same reason.  Just so the Court is

14:19:14 21    aware, he's going to keep saying what everybody else is

14:19:17 22    saying.

14:19:21 23                    ATTORNEY HOKE:  I can rephrase.

14:19:22 24                    THE COURT:  Rephrase.  Thank you.

14:19:22 25    BY ATTORNEY HOKE:

14:19:24  1    Q.    Okay.    After the police responded for a

14:19:26  2    welfare check, okay?

14:19:26  3    A.    Yeah.

14:19:28  4    Q.    Based on their investigation, were you under

14:19:33  5    the impression mother and the children no longer

14:19:35  6    resided there?

14:19:37  7    A.    Correct.

14:19:38  8    Q.    And had not resided there for some time?

14:19:40  9    A.    Correct.

14:19:40  10    Q.    Okay.    Following that, when was your next

14:19:43  11    week of custody with the children?

14:19:46  12    A.    I was supposed to get them on the 17th.

14:19:48  13    Q.    Did you get them on the 17th?

14:19:50  14    A.    No, I did not.

14:19:51  15    Q.    Did you attempt to pick the children up on

14:19:53  16    the 17th?

14:19:54  17    A.    When I was told that she had moved, I did not

14:19:57  18    even attempt to drive up due to the fact that I knew

14:20:02  19    that she had moved.

14:20:03  20    Q.    Did you reach out to mother regarding

14:20:05  21    exercising custody of the children on the 17th?

14:20:07  22    A.    Call and text and everything.   No response.

14:20:11  23    Q.    At any point, did mother ever reach out to

14:20:14  24    you regarding the children?

14:20:15  25    A.    She never has reached out to me.

14:20:18  1        Q.    Following that, when was your next period of

14:20:21  2    custody?

14:20:21  3        A.    Seventeenth.  Then the 24th I believe it is.

14:20:27  4        Q.    And the same thing on the 24th, you did not

14:20:29  5    have custody of the children?

14:20:30  6        A.    Correct.

14:20:31  7        Q.    And you reached out to mother?

14:20:33  8        A.    I figured what is the use, I know that she

14:20:36  9    had moved.

14:20:37  10        Q.    But there had been no contact from mother --

14:20:39  11        A.    No.

14:20:40  12        Q.    -- up to --

14:20:40  13        A.    None.

14:20:41  14        Q.    Okay.  After the filing of the contempt

14:20:44  15    petition and prior to today, June -- I'm sorry,

14:20:49  16    July 8th was also your weekend with the children?

14:20:50  17        A.    Correct.

14:20:51  18        Q.    And you did not exercise custody then?

14:20:52  19        A.    No.

14:20:53  20        Q.    And since the May 27th, there has been no

14:20:56  21    contact with the mother at all?

14:20:57  22        A.    No contact with mother or the children.

14:21:01  23        Q.    Or the children, no contact?

14:21:02  24        A.    No contact with the children or mother at

14:21:06  25    all.

Q.   Okay.

A.   I didn't know how to get ahold of them.

Q.   Mother says the children were in therapy. Were you aware that the children were ever put into therapy?

A.   From what the children told me, they are talking to the therapist through -- not in person but on the computer.

Q.   So they've been in therapy before though, before May 27th?

A.   Yeah.

Q.   So to your knowledge, they were?

A.   To my knowledge, they was supposedly in therapy.

Q.   Do you know for how long they were in therapy prior to that?

A.   From after the first hearing I believe it was.

Q.   Okay.  So for several months?

A.   Yeah.

Q.   So it wasn't something that just happened on May 27th that they needed therapy for?

A.   No.

ATTORNEY HOKE:  Okay.  All right.  No further questions, Your Honor.

24

THE COURT:  Cross-examination.

                    *    *    *

                CROSS-EXAMINATION

BY ATTORNEY GREGORY:

Q.    Okay.  Obviously, this is based on a legal
filing.  So if you don't know the answer off the top of
your head, I understand.  But I'm looking at the
petition for finding of contempt which was filed by
your attorney for this hearing today.  In there you
reference not seeing the children on June 10th, 17th,
and 24th, correct?

A.    Correct.

Q.    And although in your petition you say you
don't have a phone number, you don't allege that mother
is in contempt for not complying with the telephone
calls that you're talking about?

A.    Correct.

Q.    Okay.  So then with respect to June 10th, you
went to where you thought mom lived?

A.    Correct.

Q.    That's when we had the whole situation where
you ended up calling the police to have them do a
welfare check?

A.    Correct.

Q.    Then the next time that you -- there was an

25

14:22:55  1    order -- custody would have been June 17th, the

14:22:59  2    following week, correct?

14:23:00  3         A.   Correct.

14:23:00  4         Q.   And I'm just noting this for the Judge.  That

14:23:04  5    June 17th was put in as part of the May 9th order, not

14:23:06  6    part of the June order from the past, correct?

14:23:09  7         A.   Correct.

14:23:09  8         Q.   Okay.  So then at the June 17th order, you

14:23:13  9    didn't even go over there because you said what is the

14:23:16 10    point if she's not living there?

14:23:17 11         A.   Correct.

14:23:18 12         Q.   And same thing with respect to June 24th?

14:23:23 13         A.   Correct.

14:23:25 14         Q.   And is that the same thing with respect to

14:23:29 15    July 8th?

14:23:29 16         A.   Correct.

14:23:29 17         Q.   So the only time you went to mom's residence

14:23:33 18    was on June 10th -- of the times that we are talking

14:23:36 19    about here since May 27th?

14:23:38 20         A.   The reason is I had been told that she had

14:23:40 21    moved out by the neighbor and also by the police

14:23:44 22    through the gentleman who she was living with and then

14:23:47 23    where the children were coming out of the two doors

14:23:51 24    over, 280, the gentleman Mike, I was also told that he

14:23:55 25    had moved out also.

14:23:56 1    Q.   And then --

14:23:58 2    A.   That's why she couldn't come out of his house

14:24:01 3 anymore.

14:24:02 4    Q.   So with your petition, you did not bring with

14:24:06 5 you any like telephone records or text messages to show

14:24:10 6 that you made any efforts to contact mom, correct?

14:24:12 7    A.   All my contacts are in my phone which I'm not

14:24:15 8 allowed to bring into the court.

14:24:16 9    Q.   And only if you can remember.  Between

14:24:26 10 May -- the last time that you say you had the children

14:24:28 11 was on May 27th?

14:24:30 12    A.   Correct.

14:24:30 13    Q.   During that time on May 27th that you had

14:24:33 14 custody of the children, did you or did you not have a

14:24:37 15 telephone call with their father at the State

14:24:41 16 Correctional Institute?

14:24:41 17    A.   Yes.

14:24:41 18    Q.   And during that conversation with the father,

14:24:45 19 the children were in your -- in the vicinity of the

14:24:48 20 phone?

14:24:48 21    A.   Correct.

14:24:48 22    Q.   So the children heard everything that you

14:24:51 23 were talking about to dad?

14:24:52 24    A.   They were talking to him.  I was not.

14:24:54 25    Q.   And during that conversation with your son,

```
14:24:58  1    you mentioned mom is going to go to jail, correct?

14:25:02  2        A.   I did not.

14:25:03  3        Q.   You didn't say anything negative against mom?

14:25:05  4        A.   I did not.

14:25:09  5              ATTORNEY GREGORY:  Thank you.  That's

14:25:11  6    all I have.

14:25:11  7              THE COURT:  Redirect.

14:25:12  8              ATTORNEY HOKE:  No redirect.

14:25:12  9              THE COURT:  You may stand down.  Thank

14:25:17 10    you.  Any other witnesses, Attorney Hoke?

14:25:19 11              ATTORNEY HOKE:  No.

14:25:19 12              THE COURT:  Attorney Gregory.

14:25:22 13              ATTORNEY GREGORY:  May I have a five

14:25:23 14    minute break to talk to mom?

14:25:25 15              THE COURT:  You may.  Let me also just

14:25:26 16    point out to you though I'm looking at the order

14:25:27 17    scheduling custody trial of February 8th, 2022, which

14:25:32 18    specifically says paternal grandfather has standing

14:25:35 19    under Section 5325 only and should be added to the

14:25:40 20    caption.

14:25:41 21              ATTORNEY GREGORY:  And, again, I didn't

14:25:43 22    mean to misstate.  I hope the Court understands that.

14:25:43 23    I only looked at so many orders.  That's why I said,

14:25:46 24    please correct me if I'm wrong.  I'm fine with that.

14:25:48 25              THE COURT:  So it goes way back, year
```

14:25:50 1    and a half now.  Do you want a copy of that order?

14:25:52 2              ATTORNEY GREGORY:  Yes, please.

14:25:53 3              THE COURT:  Sure.  Frank, make him a

14:25:54 4    copy of this, please.  You may have five minutes.  Take

14:25:56 5    a five minute recess.

14:25:59 6              ATTORNEY GREGORY:  Is it okay if we step

14:26:01 7    out?

14:26:03 8              THE COURT:  Sure.

14:32:31 9              (Recess.)

14:32:32 10             THE COURT:  Before we go any further,

14:32:36 11   someone called to my attention they thought they saw

14:32:39 12   one of the people on Zoom taking pictures and/or

14:32:42 13   recording.  Taking pictures and/or recording any of

14:32:46 14   these proceedings is strictly forbidden.  So if anyone

14:32:48 15   has done that, not only cease doing that but please

14:32:53 16   destroy whatever picture you may have taken or whatever

14:32:56 17   recording that you may have made because it is strictly

14:33:00 18   forbidden.  So, Attorney Gregory.

14:33:03 19             ATTORNEY GREGORY:  Okay.  I'm going to

14:33:06 20   call mom.  Thank you for giving me a copy of the order,

14:33:09 21   but I do note it mentioned standing I think with

14:33:14 22   respect to one child but not both.  Is that accurate?

14:33:17 23             THE COURT:  I'm sure the other one is

14:33:18 24   added somewhere along the line, and I did make -- I

14:33:21 25   remember distinctly making a finding that this man was

the psychological grandfather of the other child.

ATTORNEY GREGORY:  Okay.  Go ahead.

THE COURT:  Take the stand.

\*   \*   \*

SARA PICKETT,

called as a witness

having been duly sworn according to law,

testified as follows:

\*   \*   \*

THE CLERK:  Please be seated.

\*   \*   \*

DIRECT EXAMINATION

BY ATTORNEY GREGORY:

Q.   Can you please state your name?

A.   Sara Pickett.

Q.   And it's been mentioned here before that grandfather has not been given an address for you.  Can you please give an address?

A.   Yes.  We have just moved.  It is 5 Keefer Road, Pine Grove, PA 17 -- sorry.  It is not 17.  I'm not sure what the zip code is to be honest.

Q.   Is that with family members?

A.   Yes.

THE COURT:  Is that Schuylkill County?

THE WITNESS:  Yes.  That would be with

14:34:32  1    my grandfather.

14:34:35  2    BY ATTORNEY GREGORY:

14:34:35  3         Q.    Okay.  So in this petition and with the

14:34:39  4    testimony today, it has been alleged and stated that

14:34:43  5    you were not available for grandfather to exercise his

14:34:48  6    custody rights on June 10th.  Is that accurate?

14:34:51  7         A.    That's correct.

14:34:52  8         Q.    And why not?

14:34:57  9         A.    Well, it's been an ongoing issue.  My

14:35:02 10    children have been telling me that he's been -- both

14:35:05 11    him and father are saying horrible things about me

14:35:07 12    during the prison phone calls.

14:35:09 13                   Just in general, grandfather makes a lot

14:35:11 14    of comments about me, very negative things trying to --

14:35:16 15    what I see is trying to negatively impact their

14:35:18 16    relationship between me and my children.  And as

14:35:21 17    somebody who has gone pro se, I didn't realize that I

14:35:24 18    had the option to file, you know, a petition for

14:35:27 19    special relief.  I understand that, yes, I am willing

14:35:31 20    to file a lot of stuff.  But my knowledge is limited.

14:35:35 21         Q.    Okay.

14:35:35 22         A.    I'm doing my best to navigate.

14:35:38 23         Q.    This was discussed sort of preliminarily

14:35:40 24    before we began.  But do you have a conciliation

14:35:43 25    conference scheduled for this week?

14:35:45  1          A.    Correct, on the 19th.

14:35:48  2          Q.    As Mr. Hexter stated, 3:00 in the afternoon?

14:35:51  3          A.    I don't have the schedule on me, but I

14:35:53  4    believe that is correct.

14:35:53  5          Q.    So you understand there is the proceeding to

14:35:57  6    deal with your issues in your petitions, correct?

14:35:59  7          A.    Correct.

14:36:00  8          Q.    Okay.  Now, father stated -- I'm sorry,

14:36:03  9    grandfather stated that he has attempted to contact you

14:36:10 10    around the time of the June 10th visit and no one

14:36:16 11    responded.  Is that accurate?

14:36:17 12          A.    I don't believe there was any attempt to

14:36:20 13    contact me.  Not that I recall.

14:36:29 14                THE COURT:  How does grandfather

14:36:31 15    typically contact you?

14:36:32 16                THE WITNESS:  It is supposed to be

14:36:33 17    through Our Family Wizard but usually text.

14:36:36 18                THE COURT:  So he has your phone number

14:36:38 19    to text you?

14:36:38 20                THE WITNESS:  Correct.

14:36:39 21                THE COURT:  All right.  Go ahead.

14:36:40 22    BY ATTORNEY GREGORY:

14:36:40 23          Q.    Is your phone number the same as it was in

14:36:42 24    the past?

14:36:42 25          A.    Yes.

                              32

ATTORNEY GREGORY:  That's all I have,

Your Honor.

THE COURT:  All right.

Cross-examination.

\*  \*  \*

CROSS-EXAMINATION

BY ATTORNEY HOKE:

Q.  Did you ever reach out to grandfather about

the visits he was supposed to be having, days he was

supposed to be getting the kids and you're not?

A.  No, I didn't.

ATTORNEY HOKE:  Okay.  No other

questions.

THE COURT:  Did you ever contact

grandfather and tell him you moved?

THE WITNESS:  No.

THE COURT:  Did you ever put it on Our

Family Wizard that you moved?

THE WITNESS:  No.  I told you before I

generally don't feel safe with that information being

disclosed to any of these people.

THE COURT:  You were ordered to keep --

in a prior order, I remember ordering you that you were

to always give your address to grandfather but he was

never to give it out to anyone else.  Am I correct on

14:37:37 1  that?

14:37:38 2      THE WITNESS:  Correct.  And then I'm

14:37:40 3  forced to state it in open court with my abuser right

14:37:41 4  there every time.

14:37:44 5      ATTORNEY HOKE:  Can I ask a follow-up,

14:37:48 6  Your Honor?

14:37:48 7      THE COURT:  You may.

14:37:48 8  BY ATTORNEY HOKE:

14:37:49 9    Q.   Ms. Pickett, you were present in motions

14:37:52 10  court when a hearing was scheduled with Attorney

14:37:54 11  Harshberger?

14:37:54 12    A.   Correct.

14:37:54 13    Q.   And Attorney Harshberger asked you.  He said,

14:37:58 14  we can exchange in a public place if you would feel

14:38:00 15  more comfortable with that so your address would not be

14:38:02 16  made known public so that, you know, father would not

14:38:06 17  know your address.  And you refused to exchange the

14:38:09 18  children in a public place, correct?

14:38:10 19    A.   That was -- I believe that was actually Judge

14:38:13 20  Adams that made that comment if I remember correctly.

14:38:17 21    Q.   Judge Adams?

14:38:20 22    A.   I don't feel that this happening is in the

14:38:20 23  best interest of my children.  I'm doing what I have to

14:38:22 24  do as a mother to protect them.  Like I said, I didn't

14:38:25 25  realize that I should have filed a petition for special

14:38:26  1    relief instead of, you know, simply stopping it.  That

14:38:31  2    was my mistake and I do acknowledge that.

14:38:35  3                    ATTORNEY HOKE:  Okay.  Nothing further,

14:38:37  4    Your Honor.

14:38:37  5                    THE COURT:  Redirect.

14:38:39  6                    ATTORNEY GREGORY:  Nothing, Your Honor.

14:38:40  7                    THE COURT:  I do believe that father,

14:38:42  8    Christopher Hexter, is on the Zoom.  Am I correct?

14:38:46  9                    ATTORNEY HOKE:  Yes.

14:38:47 10                    THE COURT:  Christopher Hexter, are you

14:39:04 11    on the Zoom?  We have you now.  Can you hear me, sir?

14:39:37 12                    THE FATHER:  Yes, Your Honor.

14:39:38 13                    THE COURT:  Okay.  Do you have any

14:39:40 14    questions of this witness?

14:39:42 15                    THE FATHER:  Not at this time.

14:39:46 16                    THE COURT:  Okay.  All right.  You may

14:39:48 17    stand down then.  Any other witnesses, Attorney

14:39:51 18    Gregory?

14:39:51 19                    ATTORNEY GREGORY:  No.  As I stated and

14:39:55 20    again --

14:39:55 21                    THE COURT:  Let's give Christopher

14:39:59 22    Hexter a chance.  Do you have any witnesses?  Do you

14:40:02 23    want to call yourself as a witness, anything that you

14:40:04 24    want to tell the Court, sir, as the father?

14:40:06 25                    THE FATHER:  No, Your Honor.

14:40:08  1                THE COURT:  Okay.  Okay.  Go ahead.

14:40:14  2                ATTORNEY GREGORY:  I would just say that

14:40:16  3     again, with respect to I'm assuming on Wednesday when

14:40:21  4     the conciliation conference occurs, if -- how old are

14:40:27  5     the children?

14:40:28  6                THE MOTHER:  Eight and nine.

14:40:29  7                ATTORNEY GREGORY:  Children are at an

14:40:30  8     age that the conciliator can talk to them and determine

14:40:32  9     whether there is a fear or threat of going over to

14:40:35 10     grandfather's house.  So again, I'm not going to ask

14:40:39 11     you, the Court, to speak to the children now.  I would

14:40:41 12     just for purposes of argument state that as far as if

14:40:47 13     the Court finds that mom is in contempt, consider --

14:40:54 14     again, her argument is that there were outstanding

14:40:56 15     issues and this Court is not in a position to deal with

14:40:59 16     that today.  So I would ask that any punishment be

14:41:04 17     deferred and almost deal with that with respect to the

14:41:06 18     custody matter as opposed to doing it now.

14:41:10 19                I understand I was appointed because of

14:41:13 20     the possibility of jail.  I would still argue though

14:41:16 21     that technically this may be the first contempt because

14:41:19 22     of the pending appeal and it is not --

14:41:22 23                THE COURT:  Granted I -- I -- you're

14:41:24 24     right.

14:41:25 25                ATTORNEY GREGORY:  It is not typical for

14:41:27 1    incarceration to be ordered with respect to a first

14:41:29 2    contempt.

14:41:29 3                    THE COURT:  Attorney Hoke, when is

14:41:30 4    grandfather's next scheduled Saturday?

14:41:34 5                    ATTORNEY HOKE:  Let me check.

14:41:39 6                    THE GRANDFATHER:  I think it is

14:41:40 7    Saturday.

14:41:42 8                    ATTORNEY HOKE:  It would be this

14:41:42 9    Saturday, the 22nd.

14:41:44 10                   THE COURT:  This Saturday?

14:41:44 11                   ATTORNEY HOKE:  Yes.

14:41:46 12                   THE COURT:  That would be July 22.

14:41:47 13                   ATTORNEY HOKE:  Yes.

14:41:48 14                   THE COURT:  So, Ms. Pickett, two

14:41:55 15   questions that are related.  Number one, where do you

14:41:59 16   want to exchange the children on July 22?  And will you

14:42:04 17   make them available for grandfather for that time he

14:42:08 18   has on July 22nd?

14:42:10 19                   THE MOTHER:  Okay.  Yes, I will comply

14:42:12 20   with the court order.  And I think the best meeting

14:42:15 21   place -- I'm trying to think what it is called -- not

14:42:21 22   the east end Wal-Mart.  The one on -- do you know what

14:42:24 23   road that is on?

14:42:29 24                   ATTORNEY GREGORY:  The one over here in

14:42:30 25   York?

14:42:33  1          THE MOTHER:  Yeah.  There is one in the

14:42:33  2    east end but there is one over --

14:42:33  3          ATTORNEY HOKE:  Is it West Manchester?

14:42:34  4          THE COURT:  West Manchester Mall area?

14:42:37  5          THE MOTHER:  I believe so.  I believe

14:42:38  6    that would be the best place to meet for now maybe

14:42:41  7    right out front the main doors.

14:42:42  8          THE COURT:  In front of the grocery

14:42:44  9    door?

14:42:45 10          THE MOTHER:  Yes, that will work.

14:42:47 11          ATTORNEY GREGORY:  I don't go to

14:42:48 12    Wal-Mart.

14:42:49 13          THE COURT:  Not that I've ever been

14:42:51 14    there.  Sarcasm intended.  What time will the children

14:42:58 15    or are the children supposed to go to grandfather that

14:43:01 16    date?

14:43:02 17          ATTORNEY HOKE:  9 a.m., Your Honor.

14:43:04 18          THE COURT:  9 a.m.  9 a.m., grocery

14:43:07 19    door, Wal-Mart, West Manchester Mall on July 22.

14:43:12 20          THE MOTHER:  Yes.

14:43:13 21          THE COURT:  In this matter, the Court

14:43:16 22    has conducted a partial contempt hearing.  Mother

14:43:21 23    claims, and she is correct, that there are allegations

14:43:25 24    of contempt that cannot be dealt with today because the

14:43:29 25    underlying modification of the original order is on

```
14:43:35  1    appeal.
14:43:37  2              However, the Court does find mother in
14:43:39  3    contempt for not making the children available to
14:43:45  4    grandfather on June 10th -- again.  I'm sorry,
14:43:52  5    June 17th.
14:43:54  6              June 10th, June 17th, and July 8th of
14:43:58  7    2023.  The sanctions will be dealt with at a later
14:44:13  8    time.  The Court had seriously considered sanctioning
14:44:16  9    mother 48 hours in jail and may still but will not make
14:44:21 10    that sanction today because mother has said in open
14:44:26 11    court that she will make the children available for
14:44:31 12    July 22, 2023, and subsequent Saturdays that
14:44:40 13    grandfather has already been ordered to have partial
14:44:44 14    custody of these two children.
14:44:47 15              Accordingly, by mother's agreement, the
14:44:51 16    Court changes the place where the children will be
14:44:59 17    delivered.  Mother will meet grandfather and deliver
14:45:01 18    the children to him on July 22, 2023, at 9 a.m. at the
14:45:09 19    Wal-Mart in the West Manchester Mall in the west end of
14:45:15 20    York, Pennsylvania, at the grocery entrance.
14:45:17 21              At the end of grandfather's custodial
14:45:20 22    time -- when is that?
14:45:23 23              THE GRANDFATHER:  Seven.
14:45:24 24              THE COURT:  At 7 p.m., grandfather will
14:45:29 25    deliver the children back to mother at the same
```

39

14:45:36  1    Wal-Mart at the grocery entrance.  Grandfather's
14:45:41  2    subsequent times that have already been ordered a long
14:45:44  3    time ago for Saturdays will similarly occur by the
14:45:49  4    parties meeting at 9 a.m. on the particular Saturday in
14:45:53  5    question and again at 7 p.m. on the same Saturday so
14:46:03  6    grandfather can deliver the children back to mother at
14:46:06  7    the end of his custodial period.
14:46:09  8            The phone/videos/FaceTime visits between
14:46:15  9    grandfather and the children will continue to take
14:46:17 10    place as ordered before.
14:46:21 11            Mother is advised strongly that the
14:46:24 12    sanctions this Court will impose later and if she is
14:46:28 13    found in contempt for other matters and any sanctions
14:46:31 14    that might arise from that will depend a great deal on
14:46:37 15    mother's complying with all of the prior orders and
14:46:42 16    this order particularly since mother has agreed to this
14:46:47 17    place and that she will make these children available.
14:46:51 18            The Court wants to make it crystal clear
14:46:53 19    to mother and everybody else that this Court is not
14:46:58 20    interested in punishing mother.  The Court is not only
14:47:03 21    interested in but totally focused upon one thing and
14:47:06 22    one thing only, and that is that grandfather sees these
14:47:10 23    children as has already been ordered by this Court, he
14:47:13 24    sees them on time, and he sees them when he's supposed
14:47:18 25    to see them, and he has his phone or video contact

14:47:22 1    also.

14:47:24 2              Any change of phone number, address,

14:47:26 3    contact information, or anything else, mother will make

14:47:30 4    grandfather aware of and make father aware of by at

14:47:38 5    least two different methods including but not limited

14:47:42 6    to Our Family Wizard, text, and e-mail.  The Court has

14:48:02 7    already dealt with mother's various petitions having

14:48:05 8    denied those earlier in this hearing.

14:48:08 9              By the Court.  Copies to Attorneys

14:48:12 10   Gregory and Hoke and a copy to father, Christopher

14:48:18 11   Hexter.  Sir, what address should the Prothonotary mail

14:48:25 12   your copy to?

14:48:27 13             Can you speak up?  My court reporter is

14:48:31 14   having trouble hearing you.

14:48:34 15             THE FATHER:  1200 -- road.

14:48:43 16             ATTORNEY GREGORY:  Your past order has

14:48:45 17   an address on it.

14:48:46 18             THE COURT:  Same address as before, sir?

14:48:48 19             THE FATHER:  Yes, Your Honor.

14:48:49 20             THE COURT:  Okay.  We will get you the

14:48:51 21   address from a prior order.  We are having a little

14:48:54 22   trouble hearing you.  That's all.  Any questions?

14:48:57 23             ATTORNEY GREGORY:  Again, my involvement

14:48:58 24   is now I guess over because I'm not going to the

14:49:01 25   conciliation conference.

14:49:02  1          THE COURT:  You're not going to

14:49:03  2   conciliation.  But, Attorney Gregory, there are still

14:49:07  3   contempt petitions out there on other matters from my

14:49:11  4   May whatever 2023 order.  So when the Superior Court

14:49:17  5   deals with them, we will be coming back for another

14:49:19  6   contempt presumably and that at that time you will

14:49:22  7   appear again.  I will not have to reappoint.  It will

14:49:25  8   be one continuing appointment.  But you're not on the

14:49:29  9   hook for any custody matters or for any appeals.

14:49:32 10          ATTORNEY GREGORY:  I don't want the

14:49:33 11   Superior Court to keep sending stuff to me and saying

14:49:35 12   that she is represented.

14:49:37 13          THE COURT:  I think I just made that

14:49:38 14   clear and --

14:49:40 15          ATTORNEY GREGORY:  You did.  We will see

14:49:42 16   if the Superior Court --

14:49:42 17          THE COURT:  My law clerk will transcribe

14:49:45 18   what I just said.  We have the ability to transcribe

14:49:46 19   from realtime.  And if the Superior Court gives you any

14:49:48 20   hassle, we will send them a copy of that.

14:49:50 21          ATTORNEY GREGORY:  Thank you very much.

14:49:52 22          ATTORNEY HOKE:  Your Honor, just a point

14:49:52 23   of clarification.  The Court found mother in contempt

14:49:55 24   for the June 10th visit, 17th, and then July 8th.  I

14:49:59 25   believe the 17th was a make-up visit given to

14:50:02  1    grandfather under the May 9th order.

14:50:05  2                    THE COURT:  You're right.

14:50:06  3                    ATTORNEY HOKE:  Under the order, his

14:50:07  4    time would have been the 24th which is another day he

14:50:11  5    missed.  He missed that one as well.

14:50:14  6                    THE COURT:  So I should have said June

14:50:17  7    10th, June 24th, and July 8th?

14:50:19  8                    ATTORNEY HOKE:  That's correct.

14:50:20  9                    THE COURT:  Anywhere I said June 17th,

14:50:23 10    change the 17 to 24.

14:50:27 11                    ATTORNEY HOKE:  The 17th was a make-up

14:50:30 12    visit given.

14:50:30 13                    THE COURT:  June 10th, June 24th, and

14:50:36 14    July 8th.

14:50:37 15                    ATTORNEY HOKE:  Another issue is my

14:50:41 16    client has advised me they are not using Our Family

14:50:41 17    Wizard because he was paying for it and mother was

14:50:41 18    refusing to use it.

14:50:48 19                    So does the Court want them to go back

14:50:48 20    to using it?  He was paying and they were not using it

14:50:51 21    or is text message sufficient?

14:50:55 22                    THE COURT:  Our Family Wizard has

14:50:58 23    certain protections.  What do you think, Ms. Pickett?

14:51:03 24                    THE MOTHER:  I mean I'm fine with doing

14:51:03 25    away with it.  It wasn't particularly helpful in

14:51:05  1    preventing the high conflict of the case anyway.

14:51:08  2                THE GRANDFATHER:  It cost me $300.

14:51:15  3                THE MOTHER:  He always text me anyway.

14:51:19  4    He never used it.  So it's totally fine.

14:51:22  5                THE COURT:  Add a sentence at the end.

14:51:25  6            Parties have mutually agreed there is no

14:51:28  7    longer a need for Our Family Wizard and finds the costs

14:51:31  8    prohibitive.  So Our Family Wizard is no longer the

14:51:34  9    means of communication between the parties but will be

14:51:37 10    by text, e-mail, phone.  And any nonemergency -- I

14:51:47 11    always use e-mail.  Just stop at e-mail.

14:51:51 12                ATTORNEY GREGORY:  Thank you.

14:51:52 13                THE COURT:  All right.  Anything else?

14:51:55 14                ATTORNEY HOKE:  No.  I think that is it,

14:51:57 15    Your Honor.

14:51:57 16                THE COURT:  All right.  I'm sure,

14:51:58 17    Attorney Hoke, you know what to do if there are any

14:52:01 18    problems with any future visits.

14:52:05 19            Ms. Pickett, at the risk of just beating

14:52:07 20    a dead horse, all I want is for these children to see

14:52:13 21    their grandfather as I've ordered.  Please don't make

14:52:16 22    me do anything more.

14:52:17 23                THE MOTHER:  I'm not trying to be

14:52:19 24    defiant.  I'm only trying to act like a mother and

14:52:22 25    protect the children as I --

44

14:52:24  1              THE COURT:  The final say is the

14:52:25  2    Court's, not yours.  Thank you.

14:52:29  3              The children are here, give him a half

14:52:34  4    an hour to see his grand kids.  Austin, make sure that

          5    happens without any problems.

          6              (A discussion was held off the record.)

          7              THE COURT:  Everybody on Zoom, we are

          8    finished.  You may leave the meeting.

          9              (The parties were excused.)

14:55:04 10              THE COURT:  Add a sentence.

14:55:06 11              The Court notes that mother had many

14:55:08 12    observers on Zoom.  Because the Court cannot control

14:55:14 13    the recording of proceedings and/or taking pictures of

14:55:18 14    the courtroom through Zoom, the parties are advised

14:55:23 15    that all observers who want to observe these

14:55:29 16    proceedings may do so but must be live and not by Zoom.

         17              (The proceedings concluded.)

         18                   *   *   *

         19

         20

         21

         22

         23

         24

         25

1    C E R T I F I C A T I O N

2

3         I hereby certify that the proceedings and

4    evidence are contained fully and accurately in the

5    notes taken by me on the hearing of the above cause,

6    and that this copy is a correct transcript of the same.

7

8

9

10                              *Sherri A. Reitano*

11                              Sherri A. Reitano, RPR
                                Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25