IN THE COURT OF COMMON PLEAS OF YORK COUNTY,

PENNSYLVANIA

SARA PICKETT                  :   No. 2021-FC-001007-03
                              :
      VS                      :
                              :
KRISTOFFER HEXTER             :
(via Zoom)                    :
                              :
      VS                      :
                              :   Status and Contempt
BRUCE HEXTER                  :   Hearing


York, PA, Tuesday, May 9, 2023
Before the Honorable N. Christopher Menges, Judge




APPEARANCES:

        NO COUNSEL PRESENT
        For the Plaintiff

        NO COUNSEL PRESENT
        For the Defendant

        BRANDY G. HOKE, Esquire
        For the Intervenor


                *   *   *

        TRANSCRIPT OF PROCEEDINGS

                *   *   *




                    Reported by:

                    Bethany J. Riley
                    Official Court Reporter

1 -  *Ex 7*

<u>INDEX TO WITNESSES</u>

<u>INTERVENOR'S WITNESSES</u>

Bruce Hexter
    Direct Examination by Attorney Hoke -  7
    Cross-Examination by the Mother - 15

| | | |
|---|---|---|
| 10:37:55 | 1 | * * * |
| 10:37:55 | 2 | THE COURT:  All right.  Mr. Hexter, can |
| 10:38:04 | 3 | you hear me okay? |
| 10:38:06 | 4 | THE FATHER:  Yes, Your Honor. |
| 10:38:07 | 5 | THE COURT:  Great.  All right. |
| 10:38:10 | 6 | Ms. Pickett?  All right. |
| 10:38:13 | 7 | Mr. Hexter, Attorney Hoke? |
| 10:38:16 | 8 | ATTORNEY HOKE:  Yep. |
| 10:38:17 | 9 | THE COURT:  I heard someone wants to |
| 10:38:19 | 10 | continue the matter. |
| 10:38:20 | 11 | THE MOTHER:  Yes, Your Honor.  I would |
| 10:38:22 | 12 | just like another maybe two weeks to find counsel for |
| 10:38:25 | 13 | this situation, please. |
| 10:38:26 | 14 | ATTORNEY HOKE:  And I'm going to object |
| 10:38:28 | 15 | to that, Your Honor.  She's had 30 days to find |
| 10:38:33 | 16 | counsel. |
| 10:38:33 | 17 | THE COURT:  Well, the question that I |
| 10:38:39 | 18 | have is Grandfather here has set forth, in quite some |
| 10:38:46 | 19 | detail, a number of allegations of contempt.  Some of |
| 10:38:54 | 20 | those involve phone calls, records.  Is the situation |
| 10:38:59 | 21 | getting any better or is it just as bad as it was? |
| 10:38:59 | 22 | Let's ask that question. |
| 10:39:03 | 23 | ATTORNEY HOKE:  I think it's just as bad |
| 10:39:04 | 24 | as it was.  In fact, Mother is now holding |
| 10:39:08 | 25 | Grandfather's time altogether.  His last visit he was |

| | |
|---|---|
| 10:39:11 | 1 |

supposed to have on April 22nd, she did not relinquish

the children.  Looking back at the Court's prior

Orders, going back to even June of last year, this has

been an ongoing problem with Mother.

THE COURT:  What happened on April 22nd,

ma'am?

THE MOTHER:  I'm going to decline to

speak without counsel, Your Honor.

ATTORNEY HOKE:  My client can summarize

what happened if the Court would like to hear it.

THE COURT:  The petition for contempt

I'm looking at, it appears to have been clocked in on

April 10th of 2023.  It's a month ago.  When did you

get this petition?

THE MOTHER:  Your Honor, I received the

petition when I found your -- when I picked up your

response -- or the denial to the recusal is when I

found out that that had been entered, and when I had

spoken with Attorney Bagnato, who is my attorney on

file, he affirmed that he has not received anything

such as a notice to appear or anything of that nature

on my behalf.

THE COURT:  What proof of service do you

have?

ATTORNEY HOKE:  There's a certificate of

| | | |
|---|---|---|
| 10:40:34 | 1 | service that was done by Attorney Harshberger's |
| 10:40:38 | 2 | paralegal where prior counsel was served by e-mail as |
| 10:40:41 | 3 | well as by first-class mail, and that was done on the |
| 10:40:44 | 4 | date that it was filed. |
| 10:40:51 | 5 | THE COURT:  Attorney Bagnato, is that |
| 10:40:56 | 6 | your attorney? |
| 10:40:56 | 7 | THE MOTHER:  He was my attorney.  That's |
| 10:40:58 | 8 | correct. |
| 10:40:58 | 9 | THE COURT:  Has Attorney Bagnato's |
| 10:41:06 | 10 | appearance been withdrawn of record? |
| 10:41:08 | 11 | ATTORNEY HOKE:  I believe so. |
| 10:41:09 | 12 | THE MOTHER:  Yes.  I have entered my |
| 10:41:11 | 13 | appearance as pro se because I could not come to this |
| 10:41:15 | 14 | hearing pro se -- well, without an attorney when I |
| 10:41:17 | 15 | didn't have an attorney retained.  I'm sorry.  I'm |
| 10:41:21 | 16 | having trouble speaking. |
| 10:41:22 | 17 | THE COURT:  It's okay.  When did you |
| 10:41:24 | 18 | enter your appearance pro se? |
| 10:41:28 | 19 | THE MOTHER:  That would have been on |
| 10:41:30 | 20 | Friday, May 5th, I believe was the date. |
| 10:41:34 | 21 | THE COURT:  So until May 5th, Attorney |
| 10:41:37 | 22 | Bagnato did represent you? |
| 10:41:38 | 23 | THE MOTHER:  Yes.  He was on file as my |
| 10:41:42 | 24 | attorney on record or whatever that's called.  I'm |
| 10:41:45 | 25 | sorry. |

10:41:45  1          THE COURT:  Okay.  Well, a certificate

10:41:47  2  of service appears to be in order.  It appears you were

10:41:52  3  properly served with the petition for contempt on or

10:41:57  4  about April 6, 2023.  So your request -- well, let's

10:42:03  5  hear from Father.

10:42:04  6          Mr. Hexter, do you have a position on

10:42:06  7  this continuance?

10:42:08  8          THE FATHER:  I don't see why it should

10:42:14  9  be continued.  Ms. Pickett had plenty of time to seek

10:42:18 10  additional counsel.

10:42:18 11          THE COURT:  All right.  Your request for

10:42:20 12  a continuance is denied.  So we're going to go ahead

10:42:23 13  and have a hearing.

10:42:24 14          Attorney Hoke, you ready?

10:42:26 15          THE MOTHER:  Do what you're going to do.

10:42:26 16          THE COURT:  I'm sorry, Ms. Pickett.

10:42:26 17  What did you say?

10:42:26 18          THE MOTHER:  I said, okay, do what you

10:42:30 19  are going to do.  At this point, I'm going to plead the

10:42:33 20  Fifth.  I will not participate.  They have not entered

10:42:35 21  any sort of evidence, which apparently there are

10:42:37 22  evidentiary requirements when you file something with

10:42:38 23  the Court, as well as burden of proof, so they have not

10:42:41 24  -- their petition to intervene nor would the petition

10:42:44 25  for contempt provide any sort of evidence to the Court

|          |    |                                                      |
|----------|----|------------------------------------------------------|
| 10:42:46 | 1  | to suggest that anything of this nature is actually  |
| 10:42:50 | 2  | happening.                                            |
| 10:42:50 | 3  | THE COURT:  Okay.  Attorney Hoke, you               |
| 10:42:52 | 4  | ready?                                                |
| 10:42:52 | 5  | ATTORNEY HOKE:  I'm ready.                          |
| 10:42:52 | 6  | THE COURT:  Go ahead.                               |
| 10:42:52 | 7  | ATTORNEY HOKE:  Okay.  I would call                |
| 10:42:53 | 8  | Grandfather, Bruce Hexter, please.                   |
| 10:43:01 | 9  | THE COURT:  All right.                              |
|          | 10 | *   *   *                                            |
|          | 11 | BRUCE HEXTER,                                         |
|          | 12 | called as a witness,                                 |
|          | 13 | having been duly sworn according to law,             |
|          | 14 | testified as follows:                                |
|          | 15 | *   *   *                                            |
|          | 16 | THE CLERK:  Please state and spell your            |
|          | 17 | name for the Court.                                  |
| 10:43:33 | 18 | THE GRANDFATHER:  Bruce Hexter,                     |
| 10:43:35 | 19 | H-E-X-T-E-R.                                          |
| 10:43:35 | 20 | *   *   *                                            |
| 10:43:35 | 21 | DIRECT EXAMINATION                                    |
| 10:43:35 | 22 | BY ATTORNEY HOKE:                                     |
| 10:43:37 | 23 | Q.   Thank you.  And can you confirm your address  |
| 10:43:39 | 24 | for the record?                                      |
| 10:43:39 | 25 | A.   1472 Bramblewood Court, Pottstown, PA.        |

10:43:45  1  Q. And you are Grandfather to the subject minor

10:43:45  2 child?

10:43:47  3  A. Correct.

10:43:49  4  Q. And currently you are under Custody Orders

10:43:54  5 from April 7th of 2022, June 2022, and September of

10:44:00  6 2022.  Is that correct?

10:44:01  7  A. Correct.

10:44:02  8  Q. Okay.  Under those Orders, can you state what

10:44:05  9 physical rights you have to the children?

10:44:08  10  A. The rights I have for the children, I was

10:44:11  11 supposed to get the children on the second and fourth

10:44:13  12 Saturdays of each month from 9 A.M. until 7 P.M., and

10:44:20  13 also have phone contact with both children on the

10:44:24  14 first, third and if there is a fifth Monday of each

10:44:29  15 month at 6 P.M.

10:44:32  16  Q. And what are your legal rights to the

10:44:34  17 children under those Orders?

10:44:36  18  A. I get the kids and take them out, have an

10:44:40  19 enjoyable day with them, and then take them back to the

10:44:43  20 Mother.

10:44:45  21  Q. What is your access -- do you have access

10:44:46  22 under the current Orders to any of the children's

10:44:49  23 medical or educational records?

10:44:52  24  A. I am supposed to have them, but I have not

10:44:55  25 received any information on any of that since the very

| | |
|---|---|
| 10:45:00 | 1 |
| 10:45:01 | 2 |
| 10:45:04 | 3 |
| 10:45:06 | 4 |
| 10:45:06 | 5 |
| 10:45:08 | 6 |
| 10:45:10 | 7 |
| 10:45:10 | 8 |
| 10:45:15 | 9 |
| 10:45:19 | 10 |
| 10:45:22 | 11 |
| 10:45:29 | 12 |
| 10:45:30 | 13 |
| 10:45:33 | 14 |
| 10:45:34 | 15 |
| 10:45:37 | 16 |
| 10:45:40 | 17 |
| 10:45:44 | 18 |
| 10:45:49 | 19 |
| 10:45:52 | 20 |
| 10:45:56 | 21 |
| 10:46:00 | 22 |
| 10:46:04 | 23 |
| 10:46:04 | 24 |
| 10:46:08 | 25 |

original court hearing.

Q.   And just to be clear, Mother has sole legal of both children, correct?

A.   Correct.

Q.   Okay.  But she's supposed to share information with you regarding those things under the Orders?

A.   Correct.  And we are also supposed to be -- contact through OurFamilyWizard with Judge Menges' Orders, which I wound up paying the full amount of $300, and that I have not been given the 150 back from Ms. Pickett.

Q.   Does Mother communicate with you using OurFamilyWizard?

A.   I haven't received, I believe, from when we started this approximately two to maybe three messages, period.  And each one of them were basically saying, you don't have the rights -- have any rights with them.

Q.   Let's start with the phone calls.  Have there been times going back to -- let's just look over since the Order of June of last year.  Have there been times that Mother has denied you access to the children by phone?

A.   Correct.  I've called many of times, and when I do get the -- actually get an answer, which is rare,

10:46:13  1    it's been -- I've only talked to [R.H.] I'd say 95

10:46:20  2    percent of the time.  If I do get [A.P], it's only

10:46:25  3    brief, and, in fact, the last time I actually tried

10:46:28  4    calling, the kids told me they get their baths around

10:46:34  5    6:30 at night.  The last time I called, I called at 6

10:46:39  6    o'clock, called back again with no answer at 6, leave a

10:46:42  7    message, call back at 6:15, no answer.  At 6:19, I get

10:46:47  8    a call back.  I said, oh, hey, how you doing, [R.H.],

10:46:51  9    what are you up to, and he told me he was playing with

10:46:53 10    a game and everything.  I said, where's [A.P]?  Oh,

10:46:57 11    she's getting her tubby already.  I said, oh, I guess

10:47:00 12    mommy must have put her in the tub so she didn't have

10:47:04 13    to talk to me.  Sara got on the phone, that's it, we're

10:47:08 14    done, and hung up.

10:47:10 15         Q.   Do you recall what date that was?  Was that

10:47:13 16    this past Monday or the Monday before?

10:47:17 17         A.   That was the Monday -- the third Monday, I

10:47:25 18    believe it was, in April.

10:47:28 19         Q.   Okay.  Has there been other occasions where

10:47:32 20    Mother has interrupted your phone calls with the

10:47:32 21    children?

10:47:33 22         A.   A couple of times.

10:47:34 23         Q.   What does she say when she interrupts these

10:47:37 24    phone calls with the children?

10:47:39 25         A.   Told me I'm a pedophile and stuff like that

                                        10

| 10:47:42 | 1 | on the phone.  Calling me all kinds of different names |
| 10:47:45 | 2 | like that. |
| 10:47:45 | 3 | THE COURT:  In front of the children? |
| 10:47:46 | 4 | THE WITNESS:  I believe the children are |
| 10:47:48 | 5 | in front of her because I was talking to the kids and |
| 10:47:51 | 6 | she took the phone off of them. |
| 10:47:55 | 7 | THE COURT:  Go ahead. |
| 10:47:55 | 8 | BY ATTORNEY HOKE: |
| 10:47:57 | 9 | Q.   Thank you.  So to follow up on that, have |
| 10:48:01 | 10 | there been other instances outside of these phone calls |
| 10:48:04 | 11 | that you're aware of that Mother has made derogatory |
| 10:48:07 | 12 | comments about you or about Father to the children? |
| 10:48:10 | 13 | A.   I know that the kids have told me how mommy |
| 10:48:13 | 14 | tells us she doesn't like you, mommy hates you, etc., |
| 10:48:16 | 15 | like that.  And, in fact, the last time I came to pick |
| 10:48:20 | 16 | them up, which was the Saturday before Easter, the kids |
| 10:48:24 | 17 | got into the truck with me and said, when you got here, |
| 10:48:29 | 18 | mommy was sitting there, and she saw you come up, and |
| 10:48:33 | 19 | she gave you the finger out the window.  That's bad, |
| 10:48:37 | 20 | isn't it, Pop Pop?  I said, that's very bad. |
| 10:48:40 | 21 | Q.   Okay. |
| 10:48:46 | 22 | A.   I've had the kids out a couple of times, once |
| 10:48:52 | 23 | at a playground.  They met a woman there with her |
| 10:48:55 | 24 | daughter, turns around and said to the kids -- the kids |
| 10:48:59 | 25 | were playing with her daughter and everything.  Next |

10:49:02  1    thing you know, they're up talking to the lady, said to

10:49:05  2    the lady, I wish I could stay with Pop Pop.  I don't

10:49:09  3    want to go home to mommy.  They actually said that to a

10:49:14  4    couple other people that I know that I met.

10:49:18  5        Q.   If you had to, going back since the last

10:49:21  6    Order, going back to June, would you say that your

10:49:25  7    contact with the children is -- is it -- strike.

10:49:31  8             Okay.  Going back to June from the last Order

10:49:35  9    with your phone calls with the children, do you more

10:49:38  10   consistently have contact with them or were they more

10:49:42  11   frequently denied?

10:49:43  12       A.   With the phone calls?

10:49:43  13       Q.   Yeah.

10:49:44  14       A.   Half and half, I would say.

10:49:46  15       Q.   Okay.  Regarding the children's medical

10:49:52  16   status, since the beginning of the school year, we'll

10:49:57  17   say August of last year, has Mother informed you of any

10:50:04  18   doctor's appointments she's taken the children to?

10:50:06  19       A.   None.

10:50:07  20       Q.   Has she told you of any dental appointments

10:50:09  21   she's taken the children to?

10:50:10  22       A.   None.

10:50:11  23       Q.   Have the children said anything about going

10:50:13  24   to the doctor?

10:50:14  25       A.   They said mommy said she was going to take

10:50:17   1   them to the eye doctor or the dentist a couple times

10:50:19   2   but have not gotten us there yet.

10:50:23   3        Q.   Have the children complained to you about

10:50:26   4   physical ailments?

10:50:28   5        A.   My grandson, [R.H.], actually said to me a

10:50:30   6   couple times, I have a toothache, Pop Pop.  I have a

10:50:34   7   cavity is actually what he said.

10:50:34   8        Q.   Okay.

10:50:39   9        A.   And I noticed a couple times him holding a

10:50:43  10   paper like six, eight inches from his face trying to

10:50:47  11   read it.  I said, I think you need glasses.  He said,

10:50:51  12   yeah, mommy said she's going to take us for glasses but

10:50:54  13   never has.

10:50:55  14        Q.   Regarding the children's educational status,

10:50:58  15   going back to the beginning of the school year, has

10:51:02  16   Mother provided you copies of any report cards for

10:51:05  17   either of the children?

10:51:07  18        A.   Nothing.  From what I understand, the report

10:51:10  19   cards are done electronically, and she has never given

10:51:15  20   me the access to the school report cards to get their

10:51:20  21   progresses.

10:51:22  22        Q.   And in the last Order, Mother was directed to

10:51:24  23   turn over the log-in information for the portal,

10:51:24  24   correct?

10:51:27  25        A.   Correct.

| | | |
|---|---|---|
| 10:51:27 | 1 | Q.   And that never happened? |
| 10:51:29 | 2 | A.   Never happened. |
| 10:51:30 | 3 | Q.   Has she ever told you about upcoming teacher |
| 10:51:34 | 4 | conferences for either children? |
| 10:51:36 | 5 | A.   Never. |
| 10:51:37 | 6 | Q.   Back-to-school nights? |
| 10:51:38 | 7 | A.   Never. |
| 10:51:39 | 8 | Q.   School events? |
| 10:51:40 | 9 | A.   Never. |
| 10:51:41 | 10 | Q.   Are the children involved in any other school |
| 10:51:41 | 11 | related or extracurricular activities that you are |
| 10:51:44 | 12 | aware of? |
| 10:51:44 | 13 | A.   Not that I'm aware of. |
| 10:51:46 | 14 | Q.   Okay.  And you're seeking counsel fees today |
| 10:51:58 | 15 | regarding the contempt allegations? |
| 10:52:02 | 16 | A.   Am I seeking -- |
| 10:52:04 | 17 | Q.   Counsel fees, yes. |
| 10:52:04 | 18 | A.   Yes, I am. |
| 10:52:05 | 19 | Q.   Do you know approximately how much in counsel |
| 10:52:08 | 20 | fees that you incurred from this? |
| 10:52:11 | 21 | A.   From what I understand, it's approximately |
| 10:52:13 | 22 | $750 or more. |
| 10:52:14 | 23 | ATTORNEY HOKE:  Okay.  All right.  I |
| 10:52:16 | 24 | don't have any other questions, Your Honor. |
| 10:52:17 | 25 | THE COURT:  Ms. Pickett, do you have |

14

10:52:19  1    questions of this witness?

10:52:21  2                    THE MOTHER:  Yes.

10:52:21  3                         *   *   *

10:52:21  4                    CROSS-EXAMINATION

10:52:21  5    BY THE MOTHER:

10:52:22  6         Q.    Do you have any evidence or only hearsay?

10:52:25  7         A.    Evidence or hearsay in reference to?

10:52:29  8         Q.    Any of the claims that you've made.

10:52:32  9         A.    They're all the claims I made, which how can

10:52:36 10    I make the evidence when I don't have records of phone

10:52:39 11    calls?  I don't have records of the kids talking to me.

10:52:43 12    There's no physical evidence of that, but it's all --

10:52:47 13         Q.    So you did not obtain phone records to submit

10:52:51 14    as evidence to prove your claims?

10:52:53 15         A.    Oh, it's on my phone as far as the phone

10:52:55 16    calls that I made, which shows me three seconds, five

10:52:59 17    seconds, 20 seconds with the denied phone call, with

10:53:01 18    the no answers.

10:53:03 19                    THE MOTHER:  Okay.  So no evidence.  No

10:53:04 20    further questions, Your Honor.

10:53:05 21                    THE COURT:  I have a question, sir.

10:53:07 22                    THE WITNESS:  Yes.

10:53:07 23                    THE COURT:  If this situation is so

10:53:12 24    dire, why have you not filed for modification to get

10:53:16 25    more custodial time with the children?

10:53:18    1              THE WITNESS:  I've asked my lawyer to

10:53:21    2    possibly do that, and he said he wanted to wait until

10:53:24    3    we had this hearing.

10:53:24    4              THE COURT:  Okay.  Fair enough.  Any

10:53:26    5    other questions of this witness?

10:53:27    6              ATTORNEY HOKE:  No, Your Honor.

10:53:28    7              THE COURT:  You may stand down.  Thank

10:53:30    8    you.

10:53:30    9              Oh, I'm sorry.  You may not stand down.

10:53:33   10    Mr. Hexter on Zoom, forgive me.  Do you have questions

10:53:37   11    of this witness.

10:53:38   12              THE FATHER:  I do not, Your Honor.

10:53:39   13              THE COURT:  Okay.  Now you can stand

10:53:42   14    down.

10:53:43   15              Attorney Hoke, any other witnesses?

10:53:43   16              ATTORNEY HOKE:  No, Your Honor.

10:53:44   17              THE COURT:  Okay.  Ms. Pickett, do you

10:53:48   18    have any witnesses you want to call?

10:53:51   19              THE MOTHER:  No, Your Honor.

10:53:52   20              THE COURT:  You don't want to testify?

10:53:55   21              THE MOTHER:  No, Your Honor.

10:53:56   22              THE COURT:  You know there is no right

10:54:00   23    to not self-incriminate in a civil case.

10:54:05   24              THE MOTHER:  That's fine.  I do not wish

10:54:06   25    to testify, Your Honor.  Thank you.

10:54:07 1         THE COURT:  Well, I've got a question

10:54:13 2    for you.  I have to ask you, Ms. Pickett, and that is

10:54:16 3    about how much do you make -- where do you work?  Let's

10:54:20 4    start with that.  Where do you work?

10:54:20 5         THE MOTHER:  I'm currently

10:54:24 6    self-employed.

10:54:24 7         THE COURT:  What do you do as a

10:54:26 8    self-employed person?

10:54:27 9         THE MOTHER:  I typically -- I would say

10:54:30 10   I am a business manager.  That's the simplest way to

10:54:33 11   put it.

10:54:33 12        THE COURT:  Well, what does that look

10:54:34 13   like?

10:54:35 14        THE MOTHER:  It depends on the company.

10:54:36 15   Right now I work for a company where -- it is an online

10:54:40 16   coaching company.  Typically what I would do is I run

10:54:43 17   the client retention team for them.  And what we do is

10:54:47 18   we handle the accounts receivables, you know, following

10:54:50 19   up on any declined orders during events, organizing the

10:54:54 20   back end for the billing and the accounts receivables

10:54:58 21   and things like that.

10:54:59 22        THE COURT:  So you are a consultant to

10:55:01 23   several other companies?

10:55:02 24        THE MOTHER:  I guess that's a fair way

10:55:05 25   to put it.

17

10:55:06   1          THE COURT:  How much do you expect to
10:55:09   2   earn in the year 2023 from your business?
10:55:13   3          THE MOTHER:  I honestly couldn't tell
10:55:16   4   you.
10:55:16   5          THE COURT:  Well, how much did you earn
10:55:18   6   in 2022?
10:55:19   7          THE MOTHER:  About $50,000.
10:55:22   8          THE COURT:  Okay.  Think 2023 will be
10:55:24   9   the same, better, or worse?  Any idea?
10:55:26  10          THE MOTHER:  Probably the same.
10:55:29  11          THE COURT:  Okay.  All right, thank you.
10:55:37  12          THE MOTHER:  Never mind.
10:55:38  13          THE COURT:  No, go ahead.
10:55:40  14          THE MOTHER:  No, I don't have anything
10:55:41  15   to say.
10:55:41  16          THE COURT:  Are you sure?
10:55:42  17          THE MOTHER:  Yeah.  I'm certain.
10:55:44  18          THE COURT:  Mr. Hexter on Zoom, do you
10:55:47  19   have any witnesses you want to testify?  You want to
10:55:49  20   say anything at all?
10:55:51  21          THE FATHER:  No, Your Honor.
10:55:52  22          THE COURT:  Okay.  All right.  In this
10:56:00  23   matter, the Court has before it a petition for
10:56:05  24   contempt.  Additionally, there was to be a follow-up
10:56:10  25   hearing scheduled last year, and an appeal to the

10:56:17  1    Superior Court sort of derailed that, but the Court did

10:56:25  2    mention in a prior Order that the Court might consider

10:56:27  3    giving Grandfather more rights.

10:56:34  4            In any event, the Court Order is as

10:56:37  5    follows:

10:56:37  6            1.   Mother, Sara Pickett, is found in

10:56:41  7    contempt for not having the children have phone contact

10:56:47  8    with Grandfather regularly as set forth in the Order.

10:56:50  9            2.   Mother is found in contempt for not

10:56:53 10    providing medical, educational, and other records for

10:56:58 11    the children to the Grandfather.

10:57:00 12            3.   Mother is found in contempt for not

10:57:04 13    paying Grandfather the reimbursement of $150 for half

10:57:11 14    of the OurFamilyWizard.

10:57:19 15            4.   Mother is found in contempt for not

10:57:22 16    participating in OurFamilyWizard in a meaningful way.

10:57:27 17            5.   The sanctions for these four grounds

10:57:38 18    of contempt are as follows:

10:57:43 19            A.   Legal custody is now joint between

10:57:47 20    Grandfather, Bruce Hexter, and Mother, Sara Pickett.

10:57:52 21    Neither party will schedule any appointments,

10:58:00 22    educationally, medically, or otherwise, without the

10:58:05 23    unanimous consent between the two of them as joint

10:58:09 24    legal custodians.

10:58:14 25            B.   Since Grandfather has not had

sufficient phone contact with the two children, he gets make-up time for that, and that make-up time will consist of a Saturday from 9 A.M. until 7 P.M. as an extra Saturday of partial custody, which will be on the third Saturday of June, that being June 17, 2023.  To be clear, Grandfather already is to have the second Saturday, that being June 10th, and the fourth Saturday, that being June 24th, per the prior operative Order, but in addition to that, he will have the third Saturday of June, that being June 17, 2023, again, from 9 A.M. to 7 P.M.

C.  Because Mother has not provided sufficient contact with Grandfather as per the operative Order within 20 days of today, Mother will buy, at her own expense, a cell phone for the children, which shall be their cell phone, and they shall be in possession of said cell phone.

The cell phone, of course, is not to be a smart phone that will enable the children to get on the internet or any of those sorts of things, but will be a cell phone sufficient that they may call Grandfather whenever they wish and that Grandfather may call them as set forth already in the operative Orders.

Mother will continue to pay the monthly fee for that cell phone, and Mother will not take that

11:00:41  1  cell phone away from the children under any

11:00:43  2  circumstances.

11:00:45  3         D.  All other provisions set forth in

11:00:54  4  prior Orders, including, but not limited to, the Order

11:00:57  5  of April 7, 2022, and the Order of June 2, 2022, and

11:01:03  6  the Order of September 6, 2022, remain in full force

11:01:08  7  and effect, and Mother is to obey those.

11:01:18  8         Specifically, Mother, at the very least,

11:01:20  9  is supposed to also provide Grandfather with school

11:01:25 10  portals, passwords, etc., so that he may get the

11:01:32 11  children's school information.  That is in addition to

11:01:36 12  and not instead of all the provisions set forth.

11:01:40 13         E.  Mother will within 120 days of today

11:01:54 14  reimburse Grandfather the sum of $750 in attorney's

11:01:58 15  fees.

11:02:02 16         F.  In the event that Mother does not

11:02:10 17  comply with any of these additional provisions and/or

11:02:18 18  Mother does not comply with prior Orders in this

11:02:25 19  matter, and upon a petition for contempt being

11:02:28 20  presented in this Court, the Court warns Mother that if

11:02:33 21  she might be found in contempt in the future, then

11:02:37 22  incarceration would be very likely.  And that

11:02:41 23  incarceration could be immediate, meaning that if there

11:02:45 24  is a future contempt hearing and Mother is found in

11:02:50 25  contempt at that hearing, Mother may be taken directly

| 11:02:53 | 1 | to jail from the hearing, and Mother is warned of that. |
| 11:02:57 | 2 | The Court is saddened that Mother |
| 11:03:04 | 3 | doesn't seem to have a proper respect for Court Orders |
| 11:03:12 | 4 | and for the Court in general, and implores and orders |
| 11:03:16 | 5 | Mother to comply with all Orders of Court in this |
| 11:03:20 | 6 | matter as set forth herein and in prior orders. |
| 11:03:27 | 7 | By the Court.  Copy to Attorney |
| 11:03:34 | 8 | Harshberger, Joshua Scott Harshberger.  Copy to Father, |
| 11:03:42 | 9 | Kristoffer Hexter. |
| 11:03:44 | 10 | What address do you want that mailed to, |
| 11:03:47 | 11 | sir? |
| 11:03:48 | 12 | THE FATHER:  The 1200 Mokychic, Your |
| 11:03:48 | 13 | Honor. |
| 11:03:48 | 14 | THE COURT:  Can you recite that for the |
| 11:03:48 | 15 | court reporter, please? |
| 11:03:57 | 16 | THE FATHER:  1200 Mokychic |
| 11:04:03 | 17 | M-O-K-Y-C-H-I-C Drive, Collegeville, Pennsylvania |
| 11:04:09 | 18 | 19426. |
| 11:04:09 | 19 | THE COURT:  Is there an inmate number or |
| 11:04:10 | 20 | anything that should be attached to that? |
| 11:04:12 | 21 | THE FATHER:  QL4504.  Your Honor, if I |
| 11:04:20 | 22 | may, the last correspondence you tried to send me was |
| 11:04:23 | 23 | not properly coded so it was kicked back to you. |
| 11:04:26 | 24 | THE COURT:  All right.  What was that |
| 11:04:27 | 25 | code number again so the court reporter is sure to have |

11:04:30  1  it and give it to the prothonotary?

11:04:31  2          THE FATHER:  Well, it's a separate code

11:04:35  3  number.  It's a OGN, not the state ID number.

11:04:39  4          THE COURT:  All right.  So what needs to

11:04:41  5  be on the envelope?

11:04:41  6          THE FATHER:  There's a courts and

11:04:45  7  attorney code and time code that should be put on the

11:04:50  8  envelope.  The correspondence prior to this last one

11:04:53  9  did have that code, but the last one that was attempted

11:04:57 10  to be received on this past Friday was denied.

11:05:00 11          THE COURT:  All right.  And copy, of

11:05:07 12  course, to Mother, Sara Pickett.  What address do you

11:05:10 13  want that mailed to you, ma'am?

11:05:11 14          THE MOTHER:  2159 White Street, Suite 3,

11:05:20 15  Box 142, York, PA 17404.

11:05:26 16          THE COURT:  Okay.  Ma'am, do you have

11:05:28 17  any questions?

11:05:32 18          THE MOTHER:  No, I think I'm okay, Your

11:05:35 19  Honor.

11:05:35 20          THE COURT:  All right.  You understand

11:05:36 21  what you got to do?

11:05:37 22          THE MOTHER:  Understood.

11:05:39 23          THE COURT:  Okay.  All right.

11:05:41 24          ATTORNEY HOKE:  Your Honor, just

11:05:42 25  briefly, is the change in legal custody, since it's

```
11:05:45  1    switching from sole to joint, done in consideration
11:05:46  2    with the custody factors?
11:05:48  3                    THE COURT:  Candidly, it's done because
11:05:52  4    the Court wants to enforce its Order that Grandfather
11:05:56  5    receive the medical and educational and so forth
11:06:00  6    information.  It would appear the only way to make that
11:06:04  7    happen is to award him joint legal custody.  So it's an
11:06:08  8    enforcement sanction --
11:06:11  9                    THE MOTHER:  So he does not have
11:06:13 10    standing under 5324 for legal custody?
11:06:16 11                    THE COURT:  I'm sorry, Ms. Pickett,
11:06:17 12    forgive me.  What'd you say?
11:06:18 13                    THE MOTHER:  I said, so he does not have
11:06:20 14    standing under 5324 for legal custody and has not
11:06:23 15    presented anything to gain that, correct?  That's my
11:06:26 16    understanding.
11:06:26 17                    THE COURT:  I did not make a
11:06:28 18    determination under 5324 or 5325.  It's a sanction.
11:06:31 19                    THE MOTHER:  Thank you.
11:06:32 20                    THE COURT:  Anything else, Attorney
11:06:34 21    Hoke?
11:06:35 22                    ATTORNEY HOKE:  No.
11:06:36 23                    THE COURT:  Anything else, Ms. Pickett?
11:06:36 24                    THE MOTHER:  No, no, I'm good.
11:06:38 25                    THE COURT:  All right.  Everyone is
```

| | |
|---|---|
| 11:06:39 | 1 |
| 11:06:39 | 2 |
| 11:06:41 | 3 |
| 11:06:45 | 4 |
| 11:06:45 | 5 |
| 11:06:47 | 6 |
| 11:06:47 | 7 |
| 11:06:49 | 8 |
| 11:06:51 | 9 |
| 11:06:54 | 10 |
| 11:06:55 | 11 |
| 11:06:57 | 12 |
| 11:06:57 | 13 |
| 11:06:59 | 14 |

1   excused.  Thank you very much.

2             ATTORNEY HOKE:  Hold on.  So she has an

3   address other than the one that she just cited?

4             THE MOTHER:  No.

5             THE COURT:  Do you want to provide an

6   e-mail address to Attorney Hoke?

7             THE MOTHER:  Everything is on file with

8   the Court.  I filed everything for my pro se.  They

9   have my e-mail address, my address, I filed everything

10  that was required to be provided to the Court.

11            THE GRANDFATHER:  Have you moved?

12            THE MOTHER:  No.

13            THE COURT:  All right.  Everyone is

14  excused.  Thank you.

15                    *   *   *

16                 END OF HEARING

17                    *   *   *

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

       I hereby certify that the proceedings and evidence are contained fully and accurately in the notes taken by me on the hearing of the above cause and that this copy is a correct transcript of the same.

*Bethany Riley*
_____
BETHANY J. RILEY
Official Court Reporter