IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARA PICKETT, | : | Civ. No. 1:24-CV-537 |
| | : | |
| Plaintiff, | : | (Judge Kane) |
| | : | |
| v. | : | (Chief Magistrate Judge Bloom) |
| | : | |
| NORTH CHRISTOPHER | : | |
| MENGES, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

This case comes before us for consideration of a motion to dismiss filed by Defendant Joshua Harshberger, Esq. (Doc. 5). The plaintiff, Sara Pickett, filed this action against Harshberger and three others alleging violations of her civil rights in conjunction with a child custody suit. (Doc. 1). Harshberger has now moved to dismiss the claims against him. (Doc. 5). For the following reasons, we will recommend that this motion be granted.

### II.    Background

The case is an action for alleged civil rights violations committed against Pickett during an ongoing custody battle in Pennsylvania state court. (Doc. 1). Pickett alleges a conspiracy to deny her civil rights by

four named defendants: Pickett's husband, Kristoffer Hexter; his father, Bruce Hexter; their private attorney, the moving defendant Joshua Harshberger; and the judge who oversaw much of the litigation in question, the Honorable North Christopher Menges of the York County Court of Common Pleas. (*Id.* ¶¶ 10-13). The complaint asserts that the defendants conspired to create their desired result in defiance of Pickett's constitutional rights and Pennsylvania state law. (*Id.*).

The events leading to the instant case began in August of 2021, when B. Hexter filed a grandparent petition to intervene in an ongoing custody dispute between Pickett and K. Hexter. (Doc. 1 ¶¶ 14-15). Pickett claims that at the pretrial conference, Judge Menges indicated an intention to grant B. Hexter's desired relief and suggested that Pickett settle. (*Id.* ¶ 24). The initial hearing occurred in April of 2022. (*Id.* ¶ 25). Pickett alleges that the transcripts from this hearing are incomplete and suggests this may have been intentional. (*Id.*) The hearing resulted in a temporary order by which Pickett kept sole custody, but B. Hexter was given visitation rights. (*Id.* ¶ 28).

In June, the trial concluded. (Doc. 1 ¶ 29). The court entered a self-described "final order" in the matter, which expanded visitation and

imposed information sharing obligations on Pickett. (*Id.*). Pickett contends these obligations gave B. Hexter access to sensitive information and records without her consent. (*Id.*). The order also scheduled a future hearing and "suggest[ed]" the Hexters file a petition for contempt if they believed Pickett was not abiding by the order. (*Id.*). Between that hearing and the following hearing, Pickett raised concerns about the court making legal errors and lacking jurisdiction. (*Id.* ¶ 31). Pickett alleges that Judge Menges responded to those concerns by expressing an intention to schedule more hearings, including possible contempt hearings, and warning Pickett that K. Hexter could be granted joint custody. (*Id.* ¶ 32). Pickett argues those actions were intimidation tactics, used in retaliation for her raising concerns about potential violations of her rights. (*Id.*)

The next hearing occurred on September 6, 2022, at which time the court imposed additional information sharing obligations on Pickett, which she now argues circumvented her right to safeguard the records in question. (*Id.* ¶ 35). Pickett alleges those adjustments to the custody order indicated a desire by Judge Menges to expand B. Hexter's rights in the future. (*Id.* ¶ 36). Pickett appealed to the Superior Court of

3

Pennsylvania, which ultimately held that the order was not final and, as such, was not appealable. (*Id.* ¶¶ 30, 38).

In March of 2023, Pickett was held in contempt, which she argues was done with "zero" evidence. (*Id.* ¶¶ 38, 92(c)). Judge Menges then announced his intention to award B. Hexter shared legal custody rights as a sanction against Pickett. (*Id.* ¶ 38). Pickett argues that B. Hexter lacked the necessary standing to be granted that relief, and that the intent to grant it despite a lack of standing suggests abuse of discretion, process, and jurisdiction. (*Id.*). Pickett contends that although the provision providing for joint custody was removed from the order, Judge Menges encouraged B. Hexter to petition for such relief. (*Id.*). The petition was ultimately filed by Harshberger. (*Id.* ¶ 40). Judge Menges also apparently warned Pickett that future contempt hearings could result in her incarceration, a remark she believes was an attempt to intimidate her in retaliation for asserting her rights. (*Id.* ¶ 39). Pickett also claims an *ex parte* communication with K. Hexter around this time was not properly entered into the record by Judge Menges. (*Id.* ¶ 41).

In July of 2023, Pickett filed a motion to dismiss B. Hexter's petition for joint custody. (Doc. 1 ¶ 42). Judge Menges denied the motion, labeling

B. Hexter as one of the children's "psychological grandfather" in the process, a term Pickett argues is not proper legal terminology. (*Id.*). She claims the term, and perhaps the denial itself, was used to "aim at violating [her] exclusive rights to the child." (*Id.*). Pickett argues that Harshberger's filing of the petition despite its alleged standing issues, and Judge Menges' granting of the same, is evidence of a conspiracy to deny her fundamental rights. (*See generally* Doc. 1). That conspiracy, Pickett claims, includes Judge Menges' order prohibiting observers on Zoom in his court, which she contends was unnecessary and done to prevent the possibility of an observer recording the proceedings to challenge the authenticity of the transcripts. (*Id.* ¶ 95).

In March of 2024, Pickett filed this action against the four named defendants. (Doc. 1). When this suit commenced, the custody litigation remained ongoing. (*Id.* ¶ 44). The complaint asserts nine claims, four of which are brought against Harshberger, including two claims pursuant to 42 U.S.C. § 1983, one pursuant to 42 U.S.C. § 1985, and one state law civil conspiracy claim. (Doc. 1 ¶¶ 62, 68, 92, 101).

Harshberger now moves to dismiss the claims against him, arguing that Pickett's complaint fails as a matter of law.  (Doc. 5). After consideration, we will recommend that this motion be granted.

## III.  Discussion

### A. Motion to Dismiss – Standard of Review

The defendant has filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) permits the court to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under federal pleading standards, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court is not required to accept legal

conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

As the Third Circuit Court of Appeals has aptly summarized:

[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court

can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

## B. The Defendant's Motion to Dismiss should be Granted.

As briefly discussed above, Pickett's four claims against Harshberger are brought pursuant to 42 U.S.C. § 1983, alleging violations of her civil rights; 42 U.S.C. § 1985, alleging a conspiracy claim; and a state law claim of conspiracy. Liberally construed, Pickett contends that Harshberger violated her right to privacy and her right to custody of her children, and that he conspired with Judge Menges and the individual defendants to violate her rights.

As we will discuss, we conclude that the *Younger* abstention doctrine prevents us from considering these claims while the underlying custody case remains live in the Pennsylvania courts. Additionally, we conclude that Pickett's claims against Harshberger, as currently pleaded, fail to state a claim upon which relief can be granted. Accordingly, the defendant's motion to dismiss should be granted.

### 1. *Younger* Abstention Bars Consideration of the Plaintiff's Claims at this time.

As the Third Circuit has explained, "*Younger* abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding." *Kendal v Russell*, 572 F.3d 126, 130 (3d Cir. 2009) (citing *Younger v. Harris*, 401 U.S. 37, 41 (1971)). The doctrine contemplates three requirements, that must be met before a court exercises its discretion to abstain: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Kendall*, 572 F.3d at 131 (citing *Matusow v. Trans–County Title Agency*, LLC, 545 F.3d 241, 248 (3d Cir. 2008)). Federal courts typically abstain from hearing claims

that necessarily interfere with ongoing state cases. *See Lui v. Commission on Adult Entertainment Establishments*, 369 F.3d 319 (3d Cir. 2004); *Zahl v. Harper*, 282 F.3d 204 (3d Cir. 2002).

All three factors are met here. The complaint establishes that, at the time of its filing, custody proceedings were ongoing. (Doc. 1 ¶ 44). That satisfies the first requirement of ongoing judicial proceedings. *See Silver v. Court of Common Pleas of Allegheny County*, 802. F. App'x 55, 58-59 (3d Cir. 2020). Further, custody proceedings satisfy the second factor, as they implicate an important state interest: "[f]amily relations are a traditional area of state concern." *Moore v. Sims*, 442 U.S. 415, 435, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *see also Winston v. Children & Youth Services*, 948 F.2d 1380, 1399 (3d Cir. 1991) (Garth, J. dissenting) (observing that "Pennsylvania . . . clearly has a strong interest in administering its child welfare procedures and in adjudicating controversies that arise from that administration.").

Finally, because custody decisions in the Pennsylvania state system are made by judicial courts, with the attending right to appeal to the Superior court, the third factor is met. "[T]he third part of the [*Younger*] test 'is satisfied . . . when the federal claimant can assert his

constitutional claims during state-court judicial review . . . .' " *Zahl*, 282 F.3d 210 (quoting *O'Neill v. City of Philadelphia*, 32 F.3d 785, 792 (3d Cir.1994)). *See also See Mikhail v. Kahn*, 991 F. Supp.2d 596, 629 (E.D. Pa. 2014) (citing *Lui*, 369 F.3d at 326) ("Absent some showing of a procedural defect, the presumption is that '[s]tate courts are every bit as competent to deal with the [plaintiff's] claims . . . as are the federal courts and this, of course, includes the ability to address claims under both the State constitution and the Federal constitution.'").

Because all three factors are met here, the *Younger* abstention doctrine applies, and this court should decline to consider Pickett's claims implicating her ongoing state custody matter. However, as discussed below, we further conclude that Pickett's claims fail to state a claim upon which relief may be granted.

### 2. Pickett's § 1983 Claims Fail to State a Claim Against this Defendant.

As discussed above, Pickett asserts claims pursuant to § 1983, § 1985, and state law. With respect to her § 1983 claims, it is well established that § 1983 requires a plaintiff to show that her rights were violated by "a person acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005). While the traditional

actor under this definition is one who is employed or otherwise empowered by a state government, there are circumstances in which private actors may be regarded as acting under color of state law. *See, e.g., Donnell v. Corr. Health Servs., Inc.,* 405 F. App'x 617, 622 n. 5 (3d Cir. 2010).

This court has previously summarized our Court of Appeals' findings as to when a private individual can be regarded as a state actor for § 1983 purposes:

> "[T]he Third Circuit, in considering Supreme Court precedent, has articulated "three broad tests" to determine if a private defendant is a state actor: (1) whether the defendant exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the defendant acted with the help of or in concert with state officials; or (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity. The principal issue is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself. The inquiry is fact-specific, as Supreme Court precedent makes clear that the facts are crucial. The approach used to conduct this inquiry should "be tailored to the facts of the case before it."

*Borrell v. Bloomsburg University*, 955 F. Supp.2d 390, 401 (M.D. Pa. 2013) (internal citations, quotations, and signals omitted).

Pickett has not pleaded sufficient facts from which we could conclude that Harshberger is a state actor under any of these theories. Nothing in the complaint can be read to suggest that Harshberger "exercised powers" of the state, nor that the state and Harshberger were acting so "interdependen[tly]" as to be essentially the same entity. While Pickett's complaint alleges a conspiracy between Harshberger and Judge Menges, which could satisfy the acting-in-concert theory of state action,[1] as discussed below, Pickett has not pleaded enough to support a claim for conspiracy.

Accordingly, we cannot conclude that Harshberger is a state actor, and therefore, he is not subject to liability under § 1983.

### 3. The § 1985 Conspiracy Charge Fails to State a Claim.

While not entirely clear from the complaint, we construe Pickett's conspiracy claim as one arising under 42 U.S.C. § 1985(3). To state a conspiracy claim under this section, a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the

---

[1] We note that, if such a theory was pleaded successfully, any judicial immunity that Judge Menges might enjoy would not extend to Harshberger, because immunity for co-conspirators is not part of the history and tradition of judicial immunity. *See Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

> equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Davis v. Wigen*, 82 F.4th 204, 214 (3d Cir. 2023) (quoting *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983)). Thus, to be successful on such a claim, a plaintiff must allege "*class-based*, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis added).

Here, the only facts alleged to establish Harshberger's role in the conspiracy are his filing of petitions.  (Doc. 1 ¶ 92(e)). There are no allegations in the complaint from which we can even infer class-based discrimination or discriminatory motive. Moreover, Pickett has failed to include allegations tending to show an agreement or understanding amongst the defendants to violate her rights, "the sine qua non of a conspiracy." *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999). Without any such allegations, this claim fails to state even a "[t]hreadbare recital[ ] of the elements of a cause of action."  *Iqbal*, 556 U.S. 678.  Therefore, the claim should be dismissed.

### 4. <u>State Tort of Civil Conspiracy Claim</u>

Finally, Pickett alleges that the defendants have committed the tort of civil conspiracy against her in violation of Pennsylvania state law. Because we have concluded that the plaintiff's federal claims fail as a matter of law, this court should decline to exercise supplemental jurisdiction over these state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if- . . . the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Moreover, the plaintiff's failure to include any allegations tending to show an agreement or understanding between the defendants to violate her rights would similarly be fatal to her state law conspiracy claim. *See Mill Run Associates v. Locke Property Co., Inc.*, 282 F. Supp. 2d 278, 294 (E.D. Pa. 2003) ("Under Pennsylvania law, civil conspiracy requires an agreement among two (2) or more persons 'to do an unlawful act or to do an otherwise lawful act by unlawful means.'") (citation omitted). Accordingly, any state law conspiracy claim fails.

## IV.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's motion to dismiss (Doc. 5) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 28th day of October 2023

_s/  Daryl F. Bloom_

16

Daryl F. Bloom
Chief United States Magistrate Judge