IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SARA PICKETT, | : Civ. No. 1:24-CV-537 |
| | : |
| Plaintiff, | : (Judge Kane) |
| | : |
| v. | : (Chief Magistrate Judge Bloom) |
| | : |
| NORTH CHRISTOPHER MENGES, ET AL. | : |
| | : |
| | : |
| Defendants. | : |

## REPORT AND RECOMMENDATION

### I. Introduction

This case comes before us for consideration of a motion to dismiss filed by the Honorable North Christopher Menges. (Doc. 9). The plaintiff, Sara Pickett, filed this action against Judge Menges and three others alleging violations of her civil rights in conjunction with a child custody suit. (Doc. 1). Judge Menges has moved to dismiss the charges against him for failure to state a claim. (Doc. 5). For the following reasons, we will recommend that this motion be granted.

### II. Background

The case is an action for alleged civil rights violations committed against Pickett during an ongoing custody battle in Pennsylvania state court. (Doc. 1). Pickett alleges a conspiracy to deny her civil rights by

four named defendants: Pickett's husband, Kristoffer Hexter; his father, Bruce Hexter; their private attorney, the moving defendant Joshua Harshberger; and the judge who oversaw much of the litigation in question, the Honorable North Christopher Menges of the York County Court of Common Pleas. (*Id.* ¶¶ 10-13). The complaint asserts that the defendants conspired to create their desired result in defiance of Pickett's constitutional rights and Pennsylvania state law. (*Id.*).

The events leading to the instant case began in August of 2021, when B. Hexter filed a grandparent petition to intervene in an ongoing custody dispute between Pickett and K. Hexter. (Doc. 1 ¶¶ 14-15). Pickett claims that at the pretrial conference, Judge Menges indicated an intention to grant B. Hexter's desired relief and suggested that Pickett settle. (*Id.* ¶ 24). The initial hearing occurred in April of 2022. (*Id.* ¶ 25). Pickett alleges that the transcripts from this hearing are incomplete and suggests this may have been intentional. (*Id.*) The hearing resulted in a temporary order by which Pickett kept sole custody, but B. Hexter was given visitation rights. (*Id.* ¶ 28).

In June, the trial concluded. (Doc. 1 ¶ 29). The court entered a self-described "final order" in the matter, which expanded visitation and

imposed information sharing obligations on Pickett. (*Id.*). Pickett contends these obligations gave B. Hexter access to sensitive information and records without her consent. (*Id.*). The order also scheduled a future hearing and "suggest[ed]" the Hexters file a petition for contempt if they believed Pickett was not abiding by the order. (*Id.*). Between that hearing and the following hearing, Pickett raised concerns about the court making legal errors and lacking jurisdiction. (*Id.* ¶ 31). Pickett alleges that Judge Menges responded to those concerns by expressing an intention to schedule more hearings, including possible contempt hearings, and warning Pickett that K. Hexter could be granted joint custody. (*Id.* ¶ 32). Pickett argues those actions were intimidation tactics, used in retaliation for her raising concerns about potential violations of her rights. (*Id.*)

The next hearing occurred on September 6, 2022, at which time the court imposed additional information sharing obligations on Pickett, which she now argues circumvented her right to safeguard the records in question. (*Id.* ¶ 35). Pickett alleges those adjustments to the custody order indicated a desire by Judge Menges to expand B. Hexter's rights in the future. (*Id.* ¶ 36). Pickett appealed to the Superior Court of

Pennsylvania, which ultimately held that the order was not final and, as such, was not appealable. (*Id.* ¶¶ 30, 38).

In March of 2023, Pickett was held in contempt, which she argues was done with "zero" evidence. (*Id.* ¶¶ 38, 92(c)). Judge Menges then announced his intention to award B. Hexter shared legal custody rights as a sanction against Pickett. (*Id.* ¶ 38). Pickett argues that B. Hexter lacked the necessary standing to be granted that relief, and that the intent to grant it despite a lack of standing suggests abuse of discretion, process, and jurisdiction. (*Id.*). Pickett contends that although the provision providing for joint custody was removed from the order, Judge Menges encouraged B. Hexter to petition for such relief. (*Id.*). Judge Menges also apparently warned Pickett that future contempt hearings could result in her incarceration, a remark she believes was an attempt to intimidate her in retaliation for asserting her rights. (*Id.* ¶ 39). Pickett also claims an *ex parte* communication with K. Hexter around this time was not properly entered into the record by Judge Menges. (*Id.* ¶ 41).

In July of 2023, Pickett filed a motion to dismiss B. Hexter's petition for joint custody. (Doc. 1 ¶ 42). Judge Menges denied the motion, labeling B. Hexter as one of the children's "psychological grandfather[s]" in the

4

process, a term Pickett argues is not proper legal terminology. (*Id.*). She claims the term, and perhaps the denial itself, was used to "aim at violating [her] exclusive rights to the child." (*Id.*). Pickett argues that the filing of the petition despite its alleged standing issues, and Judge Menges' granting of the same, is evidence of a conspiracy to deny her fundamental rights. (*Id.* ¶¶ 92(a)-(e)). That conspiracy, Pickett claims, includes Judge Menges' order prohibiting observers on Zoom in his court, which she contends was unnecessary and done to prevent the possibility of an observer recording the proceedings to challenge the authenticity of the transcripts. (*Id.* ¶ 95).

In March of 2024, Pickett filed this action against the four named defendants. (Doc. 1). When this suit commenced, the custody litigation remained ongoing. (*Id.* ¶ 44). The complaint asserts nine claims against Judge Menges, including six claims pursuant to 42 U.S.C. § 1983, one each pursuant to 42 U.S.C. § 1985 and 42 U.S.C. § 1986, and one state law civil conspiracy claim. (*Id.* ¶¶ 55, 62, 69, 76, 84, 90, 96, 104).

Judge Menges now moves to dismiss the claims against him, arguing that judicial immunity applies to bar the claims against him.

(Doc. 9). After consideration, we will recommend that this motion be granted.

## III. Discussion

### A. Motion to Dismiss – Standard of Review

The defendant has filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) permits the court to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under federal pleading standards, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action."

*Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

As the Third Circuit Court of Appeals has aptly summarized:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court can also consider "undisputedly authentic document[s] that a defendant

attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

### B. The Defendant's Motion to Dismiss should be Granted.

As briefly discussed above, Pickett's nine claims against Judge Menges are brought pursuant to 42 U.S.C. § 1983, generally alleging that Judge Menges acted under color of law to deprive Pickett of various fundamental rights (Doc. 1 ¶¶ 45-90); 42 U.S.C § 1985, alleging a conspiracy to deny Pickett's civil rights (*id.* ¶¶ 92-99); 42 U.S.C. § 1986, alleging that Judge Menges neglected to prevent a deprivation of Pickett's rights (*id.* ¶ 97-99); and a state law claim of civil conspiracy. (*id.* ¶¶ 100-04). Pickett argues the conspiracy is aimed at depriving her of

8

fundamental rights as well as retaliating against her and intimidating her for refusing to settle the custody case. (*Id.*).

As we will discuss, we conclude that the *Younger* abstention doctrine prevents us from considering these claims while the underlying custody case remains live in the Pennsylvania courts. Additionally, we conclude that these claims against Judge Menges are barred by judicial immunity. Accordingly, we recommend that Judge Menges' motion be granted.

> 1. *Younger* Abstention Bars Consideration of the Plaintiff's Claims at this time.

As the Third Circuit has explained, "*Younger* abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding." *Kendal v Russell*, 572 F.3d 126, 130 (3d Cir. 2009) (citing *Younger v. Harris*, 401 U.S. 37, 41 (1971)). The doctrine contemplates three requirements that must be met before a court exercises its discretion to abstain: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Kendall*, 572 F.3d at

9

131 (citing *Matusow v. Trans–County Title Agency*, LLC, 545 F.3d 241, 248 (3d Cir. 2008)). Federal courts typically abstain from hearing claims that necessarily interfere with ongoing state cases. *See Lui v. Commission on Adult Entertainment Establishments*, 369 F.3d 319 (3d Cir. 2004); *Zahl v. Harper*, 282 F.3d 204 (3d Cir. 2002).

All three factors are met here. The complaint establishes that, at the time of its filing, custody proceedings were ongoing. (Doc. 1 ¶ 44). That satisfies the first requirement of ongoing judicial proceedings. *See Silver v. Court of Common Pleas of Allegheny County*, 802. F. App'x 55, 58-59 (3d Cir. 2020). Further, custody proceedings satisfy the second factor, as they implicate an important state interest, as "[f]amily relations are a traditional area of state concern." *Moore v. Sims*, 442 U.S. 415, 435, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *see also Winston v. Children & Youth Services*, 948 F.2d 1380, 1399 (3d Cir. 1991) (Garth, J. dissenting) (observing that "Pennsylvania . . . clearly has a strong interest in administering its child welfare procedures and in adjudicating controversies that arise from that administration.").

Finally, because custody decisions in the Pennsylvania state system are made by judicial courts, with the attending right to appeal to the

Superior court, the third factor is met. "[T]he third part of the [*Younger*] test 'is satisfied . . . when the federal claimant can assert his constitutional claims during state-court judicial review . . . .' " *Zahl*, 282 F.3d 210 (quoting *O'Neill v. City of Philadelphia*, 32 F.3d 785, 792 (3d Cir. 1994)). *See also See Mikhail v. Kahn*, 991 F. Supp.2d 596, 629 (E.D. Pa. 2014) (citing *Lui*, 369 F.3d at 326) ("Absent some showing of a procedural defect, the presumption is that '[s]tate courts are every bit as competent to deal with the [plaintiff's] claims . . . as are the federal courts and this, of course, includes the ability to address claims under both the State constitution and the Federal constitution.'").

Because all three factors are met here, the *Younger* abstention doctrine applies, and this court should decline to consider Pickett's claims implicating her ongoing state custody matter. However, as discussed below, we further conclude that Pickett's claims fail because they are barred by judicial immunity.

### 2. Judicial Immunity Bars Pickett's Claims against Judge Menges.

It is well settled that state judges are entitled to immunity from civil liability for claims arising out of acts taken in their official capacities. As the Third Circuit has explained, "[a] judicial officer in the

11

performance of his or her duties has absolute immunity from suit." *Kwasnik v. LeBlon*, 228 F. App'x 238, 243 (3d Cir. 2007) (citing *Mireles v. Waco*, 502 U.S. 9, 12 (1991)). This immunity is broad: so long as the complained-of acts are judicial and within the judge's jurisdiction, "immunity applies even when the judge is accused of acting maliciously and corruptly." *Id.; see also Stump v. Sparkman,* 435 U.S. 349, 356–57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"). Even if a plaintiff alleges that the judicial act is a result of a corrupt conspiracy, judicial immunity applies if it is within the judge's jurisdiction. *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Thus, judicial immunity applies where the court the judge is sitting in has jurisdiction over the subject matter, and the challenged actions of the judge were judicial acts. *Stump*, 435 U.S. 356.

Here, we conclude that judicial immunity applies to bar the claims against Judge Menges. As to the jurisdictional element, the subject matter of the underlying action is a custody dispute, over which the courts of common pleas in Pennsylvania plainly have subject matter

jurisdiction. *See* 42 Pa. Cons. Stat. §§ 931(a), 3104. Further, the complained-of acts set forth in Pickett's complaint are plainly judicial acts. Pickett accuses Judge Menges of acts such as: making statements on the record, denying and granting motions, forcing disclosure via judicial order, entering non-final orders, misstating the law, failing to apply the law, prompting a party to file petitions, and failing to *sua sponte* dismiss improper filings. (*See generally* Doc 1). Each claim clearly arises out of the judge's role in the judicial process in family court against Pickett. Thus, judicial immunity applies.

Accordingly, we conclude that Judge Menges is entitled to absolute immunity from these claims, and the claims against him should be dismissed.

## IV. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's motion to dismiss (Doc. 9) be GRANTED, and the claims against Judge Menges be DISMISSED WITH PREJUDICE.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or

matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 29th day of October 2023

        <u>*s/ Daryl F. Bloom*</u>
        Daryl F. Bloom
        Chief United States Magistrate Judge