J-A23006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| S.P. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| K.H. & B.H. | : | No. 772 MDA 2023 |

Appeal from the Order Entered May 11, 2023
In the Court of Common Pleas of York County Civil Division at No(s):
2021-FC-001007-03

BEFORE:  LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.*

MEMORANDUM BY LAZARUS, J.:            **FILED: JANUARY 3, 2024**

S.P. (Mother) appeals, *pro se*, from the order, entered in the Court of Common Pleas of York County, finding her in civil contempt for violating prior custody orders and imposing sanctions. After our review, we affirm on the opinion authored by the Honorable N. Christopher Menges.

The extensive procedural history of this matter is set forth in Judge Menges' opinion and will not be repeated herein. **See** Trial Court Memorandum Opinion, 6/21/23, at 1-9. In short, Mother and K.H (Father) have been involved in custody proceedings since 2018. The original custody order, entered on January 23, 2019, granted Mother and Father shared legal and physical custody of A.E.P. (born December 2013) and R.J.H. (born April

---

* Former Justice specially assigned to the Superior Court.



2015) (collectively, Children).[1] Father was subsequently charged with sexual offenses,[2] prompting Mother to file a petition to modify custody, seeking sole legal and physical custody of Children. Paternal Grandfather[3] filed a petition to intervene seeking visitation with Children.[4]

On April 11, 2022, the first day of the custody trial, the trial court issued a temporary custody order[5] granting Mother sole legal and physical custody of Children and permitting Grandfather to have phone calls with Children at least three times a month, as well as partial physical custody once a month for ten hours. On June 3, 2022,[6] the court entered an order granting Mother sole legal and physical custody, and granting Grandfather phone calls with

---

[1] Although Father is the biological father of R.J.H, he is not the biological father of A.E.P.

[2] Father pleaded no contest to various sexual offenses and was sentenced to a term of 4½ to 10 years' incarceration.

[3] Grandfather is the biological grandfather of R.J.H., but not A.E.P.

[4] On May 12, 2021, Mother filed a petition seeking a temporary protection from abuse (PFA) order, to protect Mother and Children, alleging Father "seems to be escalating in terms of violence toward the kids and . . . [that Father] has multiple charges of endangering children, child pornography, and sexual assault against other minors." Petition for Temporary Protection Order, 5/12/21, at 1.

[5] The order also granted Father phone contact, via Zoom, with R.J.H. for 30 minutes once a week and also authorized him to write letters to R.J.H. *See* Order, 4/11/22, at 3.

[6] Although the custody trial was held on June 2, 2022, the order was received by the York County Prothonotary and entered on the docket on June 3, 2022. *See* Pa.R.C.P. 236.

Children on the first, third, and fifth Monday of every month at 6 PM, and partial physical custody on the second and fourth Saturdays of every month from 9 AM to 7 PM. The court ordered all parties to sign up for the "Our Family Wizard" app, a platform where families can communicate and share information, including schedules, expenses, and messages. Finally, the court ordered Mother to provide Father and Grandfather access to the Children's school portal for information and records.

On September 6, 2022, the court held a review hearing, after which it confirmed its June 3, 2022 order[7] and included the following additional provisions requiring Mother to: put Children's schedule on Our Family Wizard; provide Grandfather the password to Children's school portal; and sign releases so that Grandfather could speak to Children's therapists.

On April 10, 2023, Grandfather filed a contempt petition alleging Mother had violated the court's prior custody orders by

> refusing to comply with the phone call provisions outlined in the [o]rders[, . . .] speaking ill and derogator[ily] about Grandfather in front of [C]hildren[,] . . . refusing to communicate or furnish records to Grandfather about [C]hildren[,] including but not limited to school reports, conferences, pictures, mental health, and counseling[,] . . . not informing Grandfather of parent[-]teacher conferences for [C]hildren[,] and refus[ing] to allow Grandfather to order school pictures of [C]hildren."[8]

---

[7] At the hearing, the court scheduled a second review hearing given Mother's lack of compliance.

[8] That same day, Mother filed a recusal motion, which the court denied.

- 3 -

*See* Contempt Petition, 4/10/23, at 2-3. The court held a status/contempt hearing on May 9, 2023, where Grandfather testified; Mother, who was *pro se*, failed to testify, and also offered no witnesses or other evidence on her behalf at the contempt hearing.[9]

On May 11, 2023, the court entered an order finding Mother in contempt for the following reasons:

(1) Failing to have Children make phone contact with Grandfather regularly as set forth in court order;

(2) Failing to provide medical, educational, and other records for the Children to Grandfather;

(3) Failing to reimburse Grandfather $150.00 for half of the cost of the OurFamilyWizard app; and

(4) Failing to participate in OurFamilyWizard "in a meaningful way."

Contempt Order, 5/11/23, at 2. The court also ordered that: (1) Grandfather was entitled to additional custodial time on Saturday, June 17, 2023, from 9AM to 7 PM, representing "make-up time" for the failure to have his court-ordered phone calls with Children; (2) Mother buy Children a non-smart cell phone, at her own expense and within 20 days, so Children may call Grandfather whenever they wish and vice versa; (3) Mother continue to pay the monthly fee for Children's cell phone; (4) Mother, at the very least, provide Grandfather with school portals, passwords, etc., so he may access Children's

---

[9] At the beginning of the hearing, Mother requested a continuance so she could seek new counsel, which the court denied. Although Mother declined to testify or call any witnesses in her own defense at the hearing, she did, in fact, cross-examine Grandfather at the hearing.

- 4 -

school information; and (5) Mother reimburse Grandfather $750.00 in attorneys' fees within 120 days. ***Id.*** at 2-4. Finally, the court reiterated that all provisions in the court's prior custody orders (dated April 7, 2022, June 3, 2022, and September 6, 2022) remained "in full force and effect and Mother is to obey those." ***Id.*** at 4.

Mother timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[10] She raises the following issues for our review:

> (1) Whether the trial court erred or abused its discretion in its finding of contempt.
>
> (2) Whether the trial court adequately weighed the applicable evidence provided on the record in the hearings held on April 7, 2022, June [3], 2022, September 6, 2022, and May 9, 2023.
>
> (3) Whether the trial court sufficiently stated its rationale for its finding of contempt.
>
> (4) Whether the trial court erred or abused its discretion by entering sanctions not requested prior.
>
> (5) Whether the trial court erred or abused its discretion in determining sanctions.
>
> (6) Whether the trial court has shown bias or ill will in its decision-making.

Brief of Appellant, at 4.

---

[10] On October 5, 2022, Mother filed a notice of appeal challenging the court's September 6, 2022 order that was issued following a custody review hearing. However, our Court quashed that appeal concluding that the order was not final or otherwise appealable. ***See Pickett v. Hexter, et al***, 1417 MDA 2022 (Pa. Super. filed March 8, 2023) (unpublished memorandum decision).

A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. **See** 23 Pa.C.S.A. § 5323(g). **See also Wood v. Geisenhemer-Shaulis**, 827 A.2d 1204, 1207 (Pa. Super. 2003) ("With respect to civil contempt, 'it is axiomatic that courts have always possessed the inherent power to enforce their orders and decrees by imposing sanctions for failure to comply with said orders.'") (citation omitted).

An appellate court's standard of review concerning a trial court's contempt findings is very narrow:

> This Court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

**Gross v. Mintz**, 284 A.3d 479, 489 (Pa. Super. 2022) (citation omitted). Finally, "we defer to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as the court had the opportunity to observe their demeanor." **Harcar v. Harcar**, 982 A.2d 1230, 1236 (Pa. Super. 2009).

- 6 -

To obtain a finding of civil contempt,[11] a complainant must prove by a preponderance of the evidence that the respondent failed to comply with a definite, clear, and specific" court order. **Thomas v. Thomas**, 194 A.3d 220, 226 (Pa. Super. 2018); **Stahl v. Redcay**, 897 A.2d 478, 489 (Pa. Super. 2006) (citation omitted). Specifically, the complainant must prove: "(1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **Gross, supra** at 489 (citation omitted). A court may enforce compliance with its order "for the benefit of the party in whose favor the order runs but not to inflict punishment." **Id.**

After a review of the parties' briefs, the relevant case law, and the certified record on appeal, we can find no abuse of discretion with the trial court's decision to hold Mother in contempt for failing to comply with prior custody orders that were clear, definite, and specific and of which Mother had notice. **Thomas, supra; Stahl, supra; Gross, supra**. The court's contempt

---

[11] Contempt may be either civil or criminal. The difference between the two is based on the judicial response "to [the] contumacious behavior." **Garr v. Peters**, 773 A.2d 183, 190 (Pa. Super. 2001) (citation omitted). "A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order." **Id.** at 191. However, if "the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal." **Id.** at 191 (citation omitted).

order properly imposed non-punitive sanctions against Mother, which included reimbursing Grandfather $750.00 for his legal fees and adding back lost time to Grandfather's visits due to Mother's intentional, obstructionist actions. **See** 23 Pa.C.S.A. § 5323(g).[12] Notably, the court did not modify or expand any of the parties' pre-existing custodial rights when imposing sanctions. **See J.M. v. K.W.**, 164 A.3d 1260, 1267 (Pa. Super. 2017). Furthermore, the court's factual findings are supported in the record, in large part based on Grandfather's uncontradicted testimony, and we find no error of law. **Harcar, supra; Gross, supra.** We, therefore, rely upon Judge Menges' opinion in affirming the court's contempt order, and instruct the parties to attach a copy of that decision in the event of further proceedings in the matter.

Order affirmed.

---

[12] Pursuant to section 5323(g) of the Domestic Relations Code:

> **(g) Contempt for noncompliance with any custody order.**
>
> (1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> (i) Imprisonment for a period of not more than six months.
>
> (ii) A fine of not more than $ 500.
>
> (iii) Probation for a period of not more than six months.
>
> (iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).
>
> (v) Counsel fees and costs.

23 Pa.C.S.A. § 5323(g).

Judgment Entered.

*Benjamin D. Kohler* (signature)

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/03/2024